FILED
United States Court of Appeals
Tenth Circuit

January 29, 2008

Elisabeth A. Shumaker
Clerk of Court

PUBLISH

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

UNITED STATES OF AMERICA,

     Plaintiff-Appellee,

v.

JOHNSON KENNETH TAYLOR,

     Defendant-Appellant.

No. 06-1449

---

**Appeal from the United States District Court
for the District of Colorado
(D.C. No. 05-cr-00103-JAP)**

---

Jill M. Wichlens, Assistant Federal Public Defender (Raymond P. Moore, Federal Public Defender, with her on the briefs), Denver, Colorado, for Defendant-Appellant.

Andrew A. Vogt, Assistant United States Attorney (Troy A. Eid, United States Attorney, with him on the brief), Denver, Colorado, for Plaintiff-Appellee.

---

Before **BRISCOE**, Circuit Judge, **McWILLIAMS**, Senior Circuit Judge, and **GORSUCH**, Circuit Judge.

---

**GORSUCH**, Circuit Judge.

---

During opening statements at Johnson Kenneth Taylor's trial arising out of

a fight that he initiated on the Southern Ute Indian Reservation, the prosecutor

urged the jury to convict Mr. Taylor in order to "end the cycle of violence" on the reservation. Mr. Taylor objected to this remark and the district court promptly issued a curative instruction. Mr. Taylor did not voice any concerns about the content or sufficiency of the instruction or any lingering prejudice. Accordingly, the trial proceeded and, after three days, resulted in Mr. Taylor's conviction. Mr. Taylor now contends for the first time on appeal that the prosecutor's remark was insufficiently addressed by the district court's instruction.

There is no question that the prosecutor's remark was inappropriate. The jury's role in a criminal trial is to find facts related to the defendant's innocence or guilt, a function in which prosecutorial appeals to the resolution of social ills play no useful role. Nevertheless, because Mr. Taylor expressed no dissatisfaction with the ameliorative course adopted by the district court, we are able to review the district court's failure to issue either a mistrial or further corrective instruction *sua sponte* only for the presence of plain error. Discerning none, we affirm.

I

Viewing the facts in the light most favorable to the jury's verdict, as we must, this case arose from a fight at an outdoor party. Following a tribal powwow, Mr. Taylor, the victim Justin Boyd, and several others went to a bar in Ignacio, Colorado where they drank heavily and used cocaine. When the bar closed, the group drove to a remote location on the reservation to continue the

party, stopping on the way to pick up more alcohol. Roughly 200 people attended. At some point during the party, Mr. Taylor's ex-wife, Raylene Echohawk, became distraught and told Mr. Taylor that a man had made lewd comments to her and groped her. Ms. Echohawk then saw Mr. Boyd and indicated that he was the man in question. Mr. Taylor ran over to the car in which Mr. Boyd was sitting in the front passenger side seat. Mr. Taylor approached the side of the car and, through an open window, struck Mr. Boyd twice on the right side of his face. Mr. Taylor then opened the car door and dragged Mr. Boyd from the vehicle.

Mr. Boyd testified at trial that he subsequently ended up on the ground on his hands and knees, where he was repeatedly kicked in the face and ribs by multiple people. Mr. Boyd lost consciousness during the beating, and was dragged 50 yards from the car. He was left semi-conscious in nearby bushes and his wallet, cell phone, belt, and cocaine were stolen. The next morning, a bloodied Mr. Boyd regained consciousness and managed to walk 20 minutes to a house where he sought assistance for his injuries. He was taken to a hospital, and several days later had plastic surgery to repair a shattered orbital bone around his left eye. His lip and nose were scarred, and he continues to suffer from double vision and "flashes."

On March 10, 2005, a federal grand jury indicted Mr. Taylor on one count of assault resulting in serious bodily injury, or aiding and abetting such an

assault, in violation of 18 U.S.C. §§ 2, 113(a)(6), and 1153. After three days of testimony and deliberations, the jury found Mr. Taylor guilty as charged.

During opening statements at trial, the prosecutor made the following remark:

> You have to kind of put yourself in the shoes of those living on the Southern Ute Reservation and look at it through their eyes and get past the alcohol and the cocaine, not that it doesn't happen here every day with our families and friends. That's the reality of the reservation.
> This case is about asking you, the jury, to tell Johnson Taylor that he had no justifiable sufficient legal right to sucker punch Justin Boyd, to scar him permanently, and to end the cycle of violence out there.

Trial Tr. at 161. Defense counsel immediately objected that the remark was "inappropriate." *Id.* The court responded by admonishing the jury to "remember that what the lawyers tell you is not evidence, and the evidence in the case is what you must decide." *Id.* at 161-162. Defense counsel did not object to the content of the court's instruction, move for further instructions, move for a mistrial, or otherwise register any dissatisfaction with the court's curative course.

After entry of judgment, Mr. Taylor appealed his conviction arguing for the first time that the district court's instruction was insufficient to cure the prejudice created by the prosecutor's remark and that a new trial is necessary.

## II

A criminal trial is about the innocence or guilt of the individual defendant as measured against the statutory elements devised by Congress. Comments suggesting to the jury that a guilty verdict may be proper for reasons outside of the four corners of the statute run the risk of erroneous convictions. Appeals about the need to address societal ills speak not to the question whether the accused committed the crime alleged, but divert attention from that dispositive question and confuse the task of the jury – as finder of fact – with the task of elected officials – as the authors of social policy. Our sister circuit captured our concern when it explained that "[t]he amelioration of society's woes is far too heavy a burden for the individual defendant to bear." *United States v. Monaghan*, 741 F.2d 1434, 1441 (D.C. Cir. 1984).

On appeal, the impropriety of the prosecutor's remark is common ground. Throughout its oral presentation, the government conceded that the comment had no proper place at trial. The remaining disputed question before us is, thus, whether the district court's curative instruction, not objected to by defense counsel, sufficed to address the prejudice suffered by the defendant. In confronting that question, we must first resolve an antecedent question concerning the appropriate standard of review.

A

Where the defendant contemporaneously moves for a mistrial on the basis of prosecutorial misconduct, we review the denial of such a motion for abuse of discretion. *United States v. Gabaldon*, 91 F.3d 91, 94 (10th Cir. 1996). By contrast, in cases of prosecutorial misconduct in which the defendant makes no objection, our precedent limits us to plain error review. *See, e.g.*, *United States v. Hall*, 473 F.3d 1295, 1305 (10th Cir. 2007); *United States v. Russell*, 109 F.3d 1503, 1514 (10th Cir. 1997). The case before us falls somewhere between these two extremes: on the one hand, Mr. Taylor did lodge a contemporaneous objection to the prosecutor's remark but, on the other hand, he did not move for a mistrial and the court rapidly responded with a curative instruction to which counsel issued no complaint.

We think that the rationales for applying plain error review apply here, and that standard of review ought to control. The district court issued a curative instruction in response to Mr. Taylor's objection, effectively agreeing with Mr. Taylor that the challenged action was, in fact, prosecutorial misconduct. Because it sided *with* him, Mr. Taylor cannot fairly be said to be appealing the district court's ruling on his objection. *See United States v. Inglese*, 282 F.3d 528, 538-39 (7th Cir. 2002) ("Even if the government's comment was improper, because [the defendants] received the relief that they requested, there is no adverse ruling about which they can complain."). Instead, Mr. Taylor's complaint can more

accurately be said to pertain to the adequacy of the district court's curative actions. That is, the gravamen of Mr. Taylor's appeal is that, even after the district court's instructions to the jury, there remained a modicum of uncured prejudice sufficient to imperil his right to a fair trial. Mr. Taylor did not, however, alert the district court to his belief on this score. He neither advanced a contemporaneous objection to the district court's curative instruction, nor moved for a mistrial. Such actions, which would have given the district court the information necessary to evaluate the need for further curative steps, would have properly preserved the claim of error for appeal. Instead, for all that the district court knew, it had addressed Mr. Taylor's complaint to his satisfaction; it had no reason to believe any further issue or concern remained. Where this happens – where a party seeks on appeal to raise an issue not squarely presented to the district court in order to allow it to exercise its judgment in the first instance – we traditionally review only for plain error.

The rationale for this rule stems from concerns of fairness, an appreciation of the benefits of adversarial process, and the promotion of effective appellate review. If failing to object does not yield a more deferential standard of review than when an objection is interposed, savvy litigants, after having protested opposing counsel's remarks, would be encouraged by our legal rules to remain mum about any problems they see lurking in a district court's proffered curative instructions and raise those concerns only on appeal. Such a rule would thus

effectively invite litigants to sandbag opponents and the district court and afford them no opportunity to address and correct, if possible, any alleged deficiency in the court's curative actions.[1]  Such a rule would likewise tend to hamper our appellate review.  Distant from trial, we are not well-suited to assess the impact of remarks like the one at issue here – one-sentence in an opening statement – without the benefit of the parties' and district court's contemporary analysis and assessment.  As we have explained many times before, jury prejudice is "a highly fact-based, circumstances-dependent [issue], which the district court is far better positioned to consider than we" given its close vantage to the fray.  *United States v. Jones*, 468 F.3d 704, 710 (10th Cir. 2006).

Our application of plain error review comports with our past practice in analogous situations.  For example, in *United States v. Gonzalez-Montoya*, 161 F.3d 643, 650 (10th Cir. 1998), defense counsel objected to a prosecutor's discussion of the "deliberate ignorance" standard, but did not object again to the prosecutor's subsequent misstatement of the law on deliberate ignorance; we held that the proper scope of review of the prosecutor's subsequent, unobjected-to

---

[1]  Our concurring colleague notes that mistrial motions are already plentiful.  Concurrence at 3 n.1.  Such motions, affording as they do the district court notice of a potential problem and the opportunity to exercise its discretion to cure it, are reviewed in our circuit for an abuse of discretion.  Meanwhile, Mr. Taylor asks us to grant more expansive *de novo* review where a litigant does not move for a mistrial but merely objects and then remains quiet about a lurking problem in the district court's responsive curative instruction.  We fail to see why smart litigants, who quite rightly conform their conduct to legal rules, would not seek to take advantage of such an inexplicable disparity in our legal regime.

statement was for plain error only. Similarly, it seems to us, an initial objection to prosecutorial misconduct is insufficient to preserve a claim of prejudicial error to a district court's subsequent curative instruction. In both cases, a supervening event has occurred and it is that supervening event the appellant seeks to challenge on appeal.

Our holding today also mirrors those of several of our sister circuits who have already confronted the question we do today. *See United States v. Griffin*, 437 F.3d 767, 769-770 (8th Cir. 2006) ("[I]n this case, the district court sustained [the defendant]'s objection and gave a cautionary instruction to the jury. [The defendant] neither moved for a mistrial nor objected to the adequacy of that instruction. Therefore, the claim of error was not preserved."); *United States v. Hakim*, 344 F.3d 324, 328 (3d Cir. 2003) (holding that where defense counsel did not object to the sufficiency of the curative instruction, the court reviewed the content of the curative instruction only for plain error); *United States v. Canales*, 744 F.2d 413, 431 (5th Cir. 1984) (applying plain error review to claims of prosecutorial misconduct that were the subject of curative instructions not objected to at trial).

B

Mr. Taylor argues that *United States v. Pulido-Jacobo*, 377 F.3d 1124, 1134 (10th Cir. 2004) dictates application of a *de novo* standard of review. In fact, however, *Pulido-Jacobo* indicates that we will review claims of

prosecutorial misconduct *de novo* only in situations in which a contemporaneous objection to prosecutorial misconduct has been entered and overruled. *See id.* at 1133-34; *see also Duckett v. Mullin*, 306 F.3d 982, 988-91 (10th Cir. 2002). That, of course, is not this case as Mr. Taylor's objection was hardly overruled.

Neither is the distinction merely a formal one. When a defendant's objection to prosecutorial misconduct has been overruled, the defendant has put the district court on notice that he believes that there is an issue of uncured prejudice, and the district court simply disagrees. Having objected, there is little else that a defendant can do to ensure the fairness of his trial and preserve his or her issue for appeal. By contrast, in our case the district court agreed with the defendant's objection and thought it had fully addressed it; the defendant did nothing to raise and share his apparent lingering concerns and we have no indication that, if asked, the district court would have declined the opportunity to take further corrective action.[2]

Mr. Taylor responds that he is entitled to *de novo* review because his objection was effectively overruled, or at least was not ruled on. In this vein, Mr.

---

[2] Our case law requiring *de novo* review of the decision to overrule an objection to misconduct is admittedly at odds with holdings of most of our sister circuits who review the decision to overrule an objection on the grounds of prosecutorial misconduct for abuse of discretion. *See Griffin*, 437 F.3d at 769; *United States v. Mitchell*, 502 F.3d 931, 970 (9th Cir. 2007); *United States v. Simpson*, 479 F.3d 492, 503 (7th Cir. 2007); *United States v. Lore*, 430 F.3d 190, 210 (3d Cir. 2005). *But see United States v. Roach*, 502 F.3d 425, 432-33 (6th Cir. 2007). Because Mr. Taylor's objection was sustained, however, we have no need or occasion to address this issue.

Taylor makes much of the fact that the district court did not utter the word "sustained." But in response to Mr. Taylor's objection the court interrupted the prosecutor's opening statement and immediately issued a curative instruction; under such circumstances we cannot help but conclude that the objection was sustained, both legally and effectively in the eye of the jury. *See Shank v. Naes*, 773 F.2d 1121, 1127 (10th Cir. 1985) ("Thus, plaintiff-appellant's objection was sustained by the court advising the jury there was no such evidence."). Indeed, a court's instruction to the jury that it must disregard a lawyer's statement arguably does considerably more damage to that attorney's credibility in the jury's estimation than would the bare utterance of the word "sustained."

Our respected colleague in concurrence would reject this distinction between overruled and sustained objections, advancing two arguments in support of this proposition. First, the concurrence suggests that we have "allowed the government – rather than Defendant – to frame the issue Defendant has appealed." Concurrence at 4 n.2. But the question presented by both parties is whether any prejudice created by the prosecutorial misconduct in this case warrants reversal. Mr. Taylor asks us to answer this question in the affirmative. In its brief, the government asks us to answer this question in the negative, and does so expressly arguing that, because the district court exercised its discretion to give a curative instruction, Mr. Taylor was required to object further to

preserve his claim of prejudicial error.  *See* Gov't Brief at 4-10.[3]  Confronted with this argument, in his reply brief Mr. Taylor asks that we make clear the "plain-error standard does not apply."  Reply Brief at 2-4.  We are, of course, required to consider any argument properly presented by a party for affirming the district court's judgment, *see, e.g.*, *United States v. White*, 326 F.3d 1135, 1138 (10th Cir. 2003), and there can be no question that the parties fully joined issue on the question of our standard of review both in their briefing and at oral argument.

The concurrence seems to suggest that we should ignore the curative instruction merely because Mr. Taylor did not raise it in his opening brief.  Concurrence at 1.  But to do so would allow the appellant to control the standard of review on appeal merely by omitting record facts from its brief.  For example, as we and the concurrence agree, we review misconduct claims that are the subject of an overruled objection *de novo*, *Pulido-Jacobo*, 377 F.3d at 1134, unless there is a subsequent motion for a mistrial, in which case we review for an abuse of discretion, *Gabaldon*, 91 F.3d at 94.  As we read the concurrence's approach, an appellant whose objection was overruled and who subsequently

---

[3]  To pluck just one example from the government's brief:  "Had Defendant moved for a mistrial or a new trial or otherwise requested the trial court to take corrective action beyond the curative instruction . . . , the district court would have been able to exercise its discretion to further address the alleged error, and this Court would have been in a position to review the decision of the district court under the applicable abuse-of-discretion standard."  Gov't Brief at 9.  The concurrence itself concedes that the government argued that plain error review applied because Mr. Taylor neither moved for a mistrial nor objected to the sufficiency of the curative instruction.  Concurrence at 4 n.2.

moved for a mistrial could simply omit reference to the mistrial motion in its opening brief (thereby framing the issue in terms of his objection rather than the mistrial motion) and receive *de novo* review. We decline to curtail the adversarial process in this fashion.

Second, the concurrence suggests that a *de novo* standard of review is compelled by *Gabaldon*, *United States v. Meienberg*, 263 F.3d 1177, 1179-80 (10th Cir. 2001), *United States v. Oberle*, 136 F.3d 1414, 1421 (10th Cir. 1998), and *United States v. Lonedog*, 929 F.2d 568, 572-74 (10th Cir. 1991). However, none of these cases answered the question before us today: whether a litigant who has received all the relief he requested, in the form of a sustained objection and a curative instruction, should nonetheless be entitled to *de novo* review of the effects of any lingering prejudice.

In *Gabaldon*, we held only that an abuse of discretion standard of review applies where there *is* a contemporaneous objection and motion for a mistrial. To be sure, in *dicta* we said that in the absence of a mistrial motion, the appropriate standard of review would be *de novo*. *Gabaldon*, 91 F.3d at 94. But this statement, aside from its lack of precedential value, also is contrary to our precedent to the extent it suggests that we review *de novo*, rather than for plain error, cases in which there has been neither a mistrial motion nor a contemporaneous objection, a point the concurrence acknowledges. *See Hall*, 473 F.3d 1295; Concurrence at 4. *Oberle* applied *de novo* review to an objected-to

- 13 -

instance of misconduct, but, as the concurrence acknowledges, there is no indication that the district court subsequently offered a curative instruction. Concurrence at 6.  Unlike *Gabaldon* and *Oberle*, *Meienberg* and *Lonedog* did involve sustained objections to prosecutorial misconduct that were not the subject of further objection or a mistrial motion.  Unlike here, however, the parties did not apparently dispute the applicable standard of review, and, in any event, the court simply did not pass on the issue.  While the concurrence asserts that because the court in *Meienberg* adopted the inquiry discussed in *Gabaldon*'s *dicta*, it necessarily adopted the standard of review, Concurrence at 5, *Meienberg* nowhere discusses a standard of review for misconduct, *de novo* or otherwise.

We take our duty to follow precedent very seriously, but there simply is no prior decision on point in our court addressing the applicable standard of review in the circumstances now before us.  "Questions which merely lurk in the record, neither brought to the attention of the court nor ruled upon, are not to be considered as having been so decided as to constitute precedents."  *United Food & Commercial Workers Union, Local 1564*, 207 F.3d 1193, 1199 (10th Cir. 2000) (quoting *Webster v. Fall*, 266 U.S. 507 (1925)); *see also Brecht v. Abrahamson*, 507 U.S. 619, 630-631 (1993); *United States v. Romero*, 491 F.3d 1173, 1177 (10th Cir. 2007).  Accordingly, there is no impediment to our decision today, one bringing our case law in this arena into better harmony with our holding in *Gonzalez-Montoya* and the views of our sister circuits.

## III

With the applicable standard of review sorted, we must now turn to decide whether the district court's failure *sua sponte* to grant a mistrial or issue some further curative instructions was plain error. Plain error occurs when there is (1) error, (2) that is plain, which (3) affects the defendant's substantial rights, and which (4) seriously affects the fairness, integrity, or public reputation of judicial proceedings. *United States v. Ruiz-Terrazas*, 477 F.3d 1196, 1199 (10th Cir. 2007). In this case, we barely get out of the gate, finding no error that can reasonably be described as plain.

## A

The Supreme Court has explained that error is plain when it is "clear" or "obvious." *United States v. Olano*, 507 U.S. 725, 734 (1993). In turn, to be clear or obvious, the error must be contrary to well-settled law. *United States v. Smith*, 413 F.3d 1253, 1274 (10th Cir. 2005). Mr. Taylor points us to no authority for the proposition that the district court was clearly obliged under the circumstances to grant a mistrial *sua sponte* in response to a remark already the subject of a curative instruction. Indeed, the weight of authority seems to rest heavily against him. *See, e.g.*, *United States v. Devous*, 764 F.2d 1349, 1356 (10th Cir. 1985) (holding that where the prosecutor made improper remarks during closing arguments and a curative instruction was given, it was not plain error not to grant a mistrial *sua sponte*); *United States v. Malik*, 2007 WL 2153560, at *2-3 (3d Cir.

- 15 -

July 27, 2007) (holding that failing to grant a mistrial *sua sponte* following the prosecution's references to the defendant as "the Muslim guy" was not plain error where the defense had objected and the prosecution had been instructed to refer to the defendant by name); *United States v. Norris*, 780 F.2d 1207, 1212 (5th Cir. 1986) (holding that where the jury was instructed to disregard inadmissible testimony that it was not plain error not to order a mistrial *sua sponte*).

Neither is any error made clear or obvious when the specific circumstances of this case are considered. The prosecutor's comment came during opening statements, was not referred to again at any point during the three day trial, and the government did not attempt to press any improper insinuation to its advantage later in the trial. *See United States v. Novak*, 918 F.2d 107, 111 (10th Cir. 1990) (distinguishing improper prejudicial remarks made in opening statements that are isolated from those that the government attempts to substantiate and press to its advantage during the trial). Further, of course, the district court instructed the jury that the prosecutor's comment was not to be considered evidence; we generally presume that juries follow courts' instructions, *see Abuan v. Level 3 Commc'ns, Inc.*, 353 F.3d 1158, 1175 (10th Cir. 2003); and Mr. Taylor points us to nothing in the record suggesting that the jury failed to do so in this case.

B

Mr. Taylor responds that the problem is not whether the jury followed the court's instructions, but whether the instructions themselves addressed the correct

- 16 -

source of prejudice. That is, Mr. Taylor does not worry that the jury might have considered the prosecutor's remark to be evidence; his concern is instead that the jury might have heeded the prosecutor's call to use Mr. Taylor's trial as a vehicle to correct a broad social problem. In effect, Mr. Taylor argues, the prosecutor confused the jury about its role, not about evidentiary issues.

To be sure, Mr. Taylor could have raised this concern at trial, and had he done so we would be reviewing this matter in a very different posture. But, given that Mr. Taylor presses this point for the first time only on appeal, we can ask only whether the district court's failure to anticipate it was clearly wrong. It was not. District judges are not obliged to guess at a litigant's theory or anticipate its future arguments on appeal. Besides, the instruction the district court offered was reasonably tailored to Mr. Taylor's articulated concern. The jury's duty to consider only the evidence before it and its proper role in assessing guilt or innocence are, after all, closely intertwined. As the Supreme Court has said, "the jury's constitutional responsibility is not merely to determine the facts, but to apply the law to those facts and draw the ultimate conclusion of guilt or innocence." *United States v. Gaudin*, 515 U.S. 506, 514 (1995). Instructions that properly describe what constitutes evidence are directly aimed at helping the jury reach "the ultimate conclusion of guilt or innocence." They do so by delimiting the universe of possible facts to which the jury may apply the law in reaching its verdict. Here, the district court properly instructed the members of the jury at the

outset of the trial that, in determining guilt or innocence, they were only to consider evidence.  The court also forewarned the jury that the attorneys' opening statements should not be considered as evidence.  Following the remark in controversy, the district court reiterated and underscored that the prosecutor's remark was not to be taken as evidence, and thus, was not the basis for assigning guilt or innocence.   The district court's course was therefore reasonably designed to address Mr. Taylor's concern and we cannot say its failure, on its own motion, to offer a more fulsome instruction rose to the level of plain error.

* * *

The judgment of the district court is

*Affirmed.*

06-1449, <u>United States v. Johnson Kenneth Taylor</u>

**BRISCOE**, Circuit Judge, concurring:

I, too, would affirm the conviction of Defendant Johnson Kenneth Taylor ("Defendant"). I write separately, however, because I would apply a different standard of review to Defendant's prosecutorial misconduct claims.

*The appropriate standard of review*

I perceive our differences regarding the appropriate standard of review arise from our different reading of the issue presented on appeal. The majority identifies the issue raised by Defendant as follows: "Mr. Taylor now contends for the first time on appeal that the prosecutor's remark was insufficiently addressed by the district court's instruction." Majority Op. at 2. However, this issue does not appear in Defendant's opening appellate brief, which contains only three pages of argument. In fact, no mention is made of the district court's curative instruction—or even the word "instruction." Instead, Defendant challenges the prosecutor's alleged misconduct and frames the issue as whether "the government's appeal to the jury to 'end the cycle of violence' on the Southern Ute Indian reservation, by convicting Mr. Taylor as charged, [was] improper and prejudicial so as to require reversal of Mr. Taylor's conviction[.]" Aplt's Opening Br. at 1.[1]

---

[1] The majority mischaracterizes my argument here as allowing "an appellant whose objection was overruled and who subsequently moved for a mistrial [to] simply omit reference to the mistrial motion in its opening brief . . .
(continued...)

We have outlined the standard for appellate review of prosecutorial misconduct claims where the defendant did not move for a mistrial before the district court:

> Where there has been no motion for a mistrial or new trial, the district court has not exercised its discretion, and therefore it is meaningless to look for an abuse of discretion. In such cases, we merely review whether the conduct objected to was indeed improper. Whether prosecutorial misconduct occurred is a mixed question of law and fact, which we review de novo. If we conclude that the conduct was improper, we then evaluate whether it warrants reversal. We make this evaluation as follows:
>
> "A prosecutor's improper statement to the jury is harmless unless there is reason to believe that it influenced the jury's verdict. In assessing whether the misconduct had such an impact, we consider the trial as a whole, including the curative acts of the district court, the extent of the misconduct, and the role of the misconduct within the case . . . [T]o warrant reversal, the misconduct must have been flagrant enough to influence the jury to convict on grounds other than the evidence presented."

United States v. Gabaldon, 91 F.3d 91, 94 (10th Cir. 1996) (citing and quoting United States v. Ivy, 83 F.3d 1266, 1288 (10th Cir. 1996)) (alterations in original); see also United States v. Caballero, 277 F.3d 1235, 1242 (10th Cir. 2002) ("[A]n allegation of prosecutorial misconduct for which there was a

---

[1](...continued)
and receive *de novo* review." Majority Op. at 12-13. The majority is incorrect. My argument here simply points out that (1) once we know the facts of the case, and (2) precedent provides us with the standard of review (as is the case here), we should not shirk our obligation to follow precedent by allowing the appellee to re-frame the issue that the appellant has raised. See infra.

contemporaneous objection presents a mixed question of fact and law that we review de novo.").

Contrary to the majority's contention, our prosecutorial misconduct standard does not vary depending upon whether the district court sustained or overruled the defendant's objection, or whether the defendant objected to the district court's curative instructions. Compare United States v. Meienberg, 263 F.3d 1177, 1179-80 (10th Cir. 2001) (applying the Gabaldon standard where the prosecutor made an improper closing argument, the defendant objected, the district court sustained the objection, and the defendant "did not request a mistrial or seek any further relief"), and United States v. Lonedog, 929 F.2d 568, 572-74 (10th Cir. 1991) (applying the same prosecutorial misconduct standard, pre-Gabaldon, where "Lonedog preserved [his claims] by properly objecting," the objection "was sustained and the question was never answered," and "Lonedog did not move for a mistrial" or "even request a curative instruction"), with United States v. Pulido-Jacobo, 377 F.3d 1124, 1134 (10th Cir. 2004) (applying the same standard where the defendant objected to improper questioning and the district court overruled the objection), United States v. Toles, 297 F.3d 959, 971-72 (10th Cir. 2002) (applying the same standard where the defendant objected to an improper closing argument and the district court overruled the objection), and Ivy, 83 F.3d at 1287-88 (same). To be sure, if Defendant had moved for a mistrial, the district court had denied the motion, and Defendant were appealing

- 3 -

the denial of the motion, we would then review the district court's decision for an abuse of discretion. See United States v. Harlow, 444 F.3d 1255, 1265-67 (10th Cir. 2006); Gabaldon, 91 F.3d at 93-94.[2]  In the instant case, though, where the district court has not exercised its discretion and Defendant is not challenging any decision of the district court, our focus is solely on the prosecutor's alleged misconduct, and we review the alleged misconduct de novo, addressing its effect on the trial as a whole.

The majority creates unnecessary confusion by re-framing the issue which Defendant has set out in his brief to focus on the district court's curative instructions and failure to declare a mistrial *sua sponte*.[3]  The majority then

---

[2] The majority is correct that this affords a criminal defendant a comparatively broad scope of review if he or she does not move for a mistrial or new trial, but our precedent is clear that this is the rule.  See Meienberg, 263 F.3d at 1179-80; Gabaldon, 91 F.3d at 93-94.  Moreover, given the number of defendants who move for mistrials based on allegations of prosecutorial misconduct, this rule has hardly "invite[d] litigants to sandbag opponents and the district court," as the majority contends.  Majority Op. at 7.  The majority's explication of the horrors that will result from following our current rule, Majority Op. at 8 n.1, greatly overstates the effect of our rule on the incentives of the litigants.

[3] The majority has allowed the government—rather than Defendant—to frame the issue Defendant has appealed.  The government states the issue as follows:

Whether the failure of the district court to declare a mistrial, *sua sponte*, following Defendant's objection to an eight-word statement made by the prosecutor during the government's opening statement to the jury, where Defendant neither moved for a mistrial nor objected to the sufficiency of a curative instruction given by the

(continued...)

- 4 -

purports to solve this confusion by applying the plain error standard. Our precedent, however, demonstrates that we only review prosecutorial misconduct claims for plain error where a defendant failed to object at trial to the alleged misconduct. See, e.g, United States v. Oberle, 136 F.3d 1414, 1421 (10th Cir. 1998) (reviewing one allegedly inappropriate comment under a de novo standard where defense counsel objected at trial, but then applying a plain error standard where "defense counsel did not object to the remaining comments").

The majority's decision also deviates from our usual analysis of a district court's curative instructions. Ordinarily, in considering prosecutorial misconduct claims, we analyze curative instructions when determining whether the alleged prosecutorial misconduct "influenced the jury's verdict" and "warrants reversal." Gabaldon, 91 F.3d at 94. The majority, though, suggests that these same curative instructions now preclude any review of prosecutorial misconduct claims—except for plain error—unless a defendant has objected both to the prosecutorial misconduct and to the curative instructions (or moved for a mistrial). This is inconsistent with our precedent. We address curative instructions as part of our harmless error review, rather than as automatically precluding such review in the first place. See id.

---

[3](...continued)
court, constitutes plain error which should be noticed by this Court.

Aplee. Br. at 1.

- 5 -

The majority's attempts to distinguish our precedent are unpersuasive. Even assuming that our language in <u>Gabaldon</u> is *dicta*, we explicitly adopted the <u>Gabaldon</u> standard as part of our holding in <u>Meienberg</u>, and we reviewed the prosecutorial misconduct claim de novo, using the exact method of analysis that we had suggested in <u>Gabaldon</u>. <u>Meienberg</u>, 263 F.3d at 1180. The detail of the <u>Meienberg</u> court's analysis in adopting and applying this standard, moreover, refutes any suggestion that "the court simply did not pass on the issue," as the majority suggests. Majority Op. at 14. Further, in <u>Oberle</u>, we analyzed several instances of alleged prosecutorial misconduct and determined that plain error only applied to those instances where defense counsel did not object to the prosecutor's comments:

> Defense counsel objected to only one of the challenged comments, one in which the prosecutor stated that Oberle tried to get Jensen a "Fifth Amendment plea arrangement, showing some wherewithal, some knowledge of the criminal system, I would say." <u>This comment is reviewed de novo.</u> Because defense counsel did not object to the remaining comments, we review them for plain error.

<u>Oberle</u>, 136 F.3d at 1421 (emphasis added).[4] True, the <u>Oberle</u> court did not specify whether the district court had sustained or overruled the defendant's objection to the one challenged comment, but this simply demonstrates that the <u>Oberle</u> court was following our precedent and not altering its standard of review

---

[4] The defendant did move for a mistrial in <u>Oberle</u>, but only in response to the testimony of an FBI agent—not in response to the alleged prosecutorial misconduct. <u>Oberle</u>, 136 F.3d at 1417.

depending upon whether the district court sustained or overruled the defendant's objection.

Indeed, in the only case from this circuit that the majority cites as support for its plain error standard, we reviewed the prosecutorial misconduct claim for plain error "[b]ecause defense counsel did not specifically object to the prosecutor's remarks about the reasonable person standard." United States v. Gonzalez-Montoya, 161 F.3d 643, 650 (10th Cir. 1998) (emphasis added).  The lack of precedent from our circuit which directly supports the majority's position is telling, particularly considering how frequently we review claims of prosecutorial misconduct.

*Application to Defendant's trial*

Under the appropriate standard of review applicable to the issues raised, Defendant's prosecutorial misconduct claim still fails.  The two-step process for evaluating claims of prosecutorial misconduct requires us first to "examine whether the conduct was, in fact, improper." Oberle, 136 F.3d at 1421.  As Defendant argues, and the government does not seriously contest, the prosecutor's appeal to the jury to assist in solving a pressing social problem by convicting Defendant was improper.  See, e.g., United States v. Johnson, 968 F.2d 768, 769-70 (8th Cir. 1992) (reversing the defendant's conviction and holding that "the prosecutor's remarks . . . were unduly inflammatory and improper" where the prosecutor's rebuttal closing argument included the following: "Your decision to

uphold the law is very important to society.  You're the people that stand as a bulwark against the continuation of what Mr. Johnson is doing on the street, putting this poison on the street."); United States v. Solivan, 937 F.2d 1146, 1148-55 (6th Cir. 1991) (reversing the defendant's conviction where, during closing argument, the prosecutor told the jury, "And I'm asking you to tell her and all of the other drug dealers like her that we don't want that stuff in Northern Kentucky and that anybody who brings that stuff in Northern Kentucky . . . ."); United States v. Monaghan, 741 F.2d 1434, 1442-43 (D.C. Cir. 1984) (holding that the prosecutor's remarks, in his rebuttal closing argument, that the defendant was not an exemplary police officer and should be held to a higher standard of conduct as a police officer, were improper).

Nevertheless, the prosecutor's improper comment during opening argument does not warrant reversal.  "A prosecutor's improper statement to the jury is harmless unless there is reason to believe that it influenced the jury's verdict. . . . To warrant reversal, the misconduct must have been flagrant enough to influence the jury to convict on grounds other than the evidence presented." Gabaldon, 91 F.3d at 94.  In analyzing whether the prosecutor's improper statement affected the outcome of the trial, we must "consider the trial as a whole, including the curative acts of the district court, the extent of the misconduct, and the role of the misconduct within the case." Id.  "Thus, factors relevant to determining whether the improper commentary affected the fairness of the trial include whether the

instance was singular and isolated, whether the district court instructed the jury that the attorneys' argument was not evidence, and whether there was substantial evidence of the defendant's guilt." Oberle, 136 F.3d at 1420.

Here, the prosecutor made the improper remark during the government's opening statement. The prosecutor made no further reference to the statement during the remainder of the trial. In United States v. Gallegos, 738 F.2d 378, 383 (10th Cir. 1984) (citations omitted), we explained that allegedly improper remarks during the opening statement were harmless, because

> [t]he comments were made at the very beginning of the trial in opening statement. The matter was not mentioned again before the jury until the defendant brought it up himself. The evidence against defendant was substantial, if not overwhelming. The comments were not made by the government in closing argument and they were not fresh in the minds of the jurors . . . .

See also United States v. Portillo-Quezada, 469 F.3d 1345, 1352 (10th Cir. 2006) ("More importantly, after the incident [during voir dire] the prosecutor made no further attempts at trial to capitalize on the remarks . . . ."); Ivy, 83 F.3d at 1288 ("We ordinarily will not reverse if the misconduct was merely 'singular and isolated.'" (quoting United States v. Pena, 930 F.2d 1486, 1491 (10th Cir. 1991))). The fact that the trial lasted only three days does not change the singular and isolated nature of the prosecutor's statement. See United States v. Gordon, 173 F.3d 761, 769 (10th Cir. 1999) ("[T]he purported misconduct is insignificant when the trial is considered as a whole. It consisted of a single question in a two-

day proceeding that was not answered by Gordon nor commented on by the prosecutor in closing argument.").

Moreover, "[a] central assumption of our jurisprudence is that juries follow the instructions they receive." United States v. Castillo, 140 F.3d 874, 884 (10th Cir. 1998); see also Gordon, 173 F.3d at 769 ("Absent evidence to the contrary, we assume the jury follows a curative instruction."). In this case, Defendant immediately objected to the statement, and the district court instructed the jury to "remember that what the lawyers tell you is not evidence, and the evidence in the case is what you must decide." Tr. at 161-62. Before opening statements began, the court likewise instructed the jury that "[t]he opening statements are not evidence," id. at 143, and in the final jury instructions submitted before closing arguments, the court reminded the jury to "consider only the evidence I have admitted in the case" and that "any statements, objections, or arguments made by the lawyers are not evidence in the case," id. at 686.

Finally, contrary to Defendant's contention, there was "substantial evidence of [his] guilt." Oberle, 136 F.3d at 1420. Mr. Boyd testified that Defendant punched him twice in the face and dragged him out of the car, after which someone immediately and repeatedly kicked Mr. Boyd in the face and ribs. Mr. Howe testified that Defendant hit Mr. Boyd and pulled him out of the car; he did not know if Defendant hit Mr. Boyd again. Even Ms. Echohawk testified that, although she did not know if Defendant punched Mr. Boyd any additional times,

- 10 -

thirty seconds elapsed between the time when Defendant audibly hit Mr. Boyd and the time when Defendant returned to her side. Further, investigators found Mr. Boyd's blood on both the exterior and interior of the car, including the center console and the passenger door.

Defendant is correct that Mr. Boyd's testimony and Mr. Howe's testimony contained some inconsistencies when compared to their statements to the investigator, Officer Koenig. Both Mr. Boyd and Mr. Howe, though, had previously told Officer Koenig that defendant hit Mr. Boyd repeatedly, and most of Mr. Boyd's inconsistencies dealt with his conduct towards Ms. Echohawk, not the details of the assault itself. As the district court stated, "depending on the version the jury chooses to believe, . . . there is sufficient evidence . . . that would support a conviction of the [D]efendant on Count 1 beyond a reasonable doubt." Given the strength of the evidence against Defendant, the jury had more than enough evidence to find Defendant guilty beyond a reasonable doubt, notwithstanding the improper statement by the prosecutor.