FILED
United States Court of Appeals
Tenth Circuit

April 17, 2012

Elisabeth A. Shumaker
Clerk of Court

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

UNITED STATES OF AMERICA,

     Plaintiff-Appellee,

v.

BRIAN S. LUCAS,

     Defendant-Appellant.

No. 11-6151
(D.C. No. 5:10-CR-00187-L-1)
(W.D. Okla.)

**ORDER AND JUDGMENT**[*]

Before **LUCERO**, **EBEL** and **MATHESON**, Circuit Judges.

Brian Lucas seeks reversal of his convictions on five counts relating to drug

dealing and possession of a firearm.  Mr. Lucas has failed to show the district court erred

in denying his motion to suppress evidence or that it erred on several issues that arose

during his jury trial.  Exercising jurisdiction under 28 U.S.C. § 1291, we affirm.

---

     [*]This order and judgment is not binding precedent, except under the doctrines of
law of the case, res judicata, and collateral estoppel.  It may be cited, however, for its
persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

# I.  BACKGROUND

## A. *Factual Background*

In April 2010, three plain-clothes officers responded to a tip from a concerned neighbor that traffic patterns in a trailer park suggested illegal drug activity at a particular residence.  Two of the officers approached the residence to conduct a "knock-and-talk." A woman answered the door.  Officer Adkins introduced himself, showed his badge, and asked if he and the other officer could come in.  The woman replied that it was not her house, but she stepped to the side and pulled the door open with her.  The officers understood this gesture as an invitation to enter.  Mr. Lucas, who was standing just behind the woman, did not comment on their entry.

Once inside, Officer Adkins next asked Mr. Lucas whether he owned or leased the trailer, and Mr. Lucas confirmed that he did.  Officer Adkins asked if they could sit at the dining room table together, which they did.  The officer explained the tip from the neighbor, to which Mr. Lucas laughed and stated he did not do drugs and that there were no drugs on the premises.  Officer Adkins asked Mr. Lucas if the officers could search the residence, and Mr. Lucas said "yes."  ROA, Vol. 3, at 10.  Mr. Lucas did not appear intoxicated.

While searching the trailer, Officer Adkins found a loaded 9 mm firearm in Mr. Lucas's bedside table drawer, along with multiple clear plastic baggies, some of which contained a crystal-like substance.  Mr. Lucas was brought into the bedroom and asked to sit on the bed.  When asked if there was anything else in the house that the officers

-2-

should know about, Mr. Lucas began to cry. He directed the officers to the dishwasher; Mr. Lucas said more drugs and money were located there. In a black bag in the dishwasher, Officer Adkins found approximately $535 in U.S. currency, a set of digital scales, a clear plastic bag with more baggies, a crystal substance in some baggies, and a spoon. From this and other locations within the trailer, the officers seized a total of 29 grams of methamphetamine as well as drug paraphernalia and cash. Mr. Lucas never asked the police to stop searching.

The officers released the woman who had opened the door. While the officers were conducting the search, Mr. Lucas's fiancée, Mary Smith, arrived. Both Mr. Lucas and Ms. Smith told Officer Adkins that they were convicted felons. The following day, Officer Williams executed a search warrant on Mr. Lucas's home. During that search, Officer Williams seized various other items.

### B. *Procedural History*

On May 18, 2010, Mr. Lucas was charged in a seven-count indictment with the following: (counts 1, 3, and 4) possession with intent to distribute methamphetamine and aiding and abetting, in violation of 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2; (count 2) unlawful use of a communication facility to facilitate the distribution of methamphetamine, in violation of 21 U.S.C. § 843(b); (count 5) being a felon in possession of a firearm and ammunition, in violation of 18 U.S.C. § 922(g)(1); (count 6) possessing a firearm in furtherance of a drug trafficking crime, in violation of 18 U.S.C. § 924(c)(1)(A); and (count 7) maintaining a residence for drug distribution, in violation

of 21 U.S.C. § 856(a)(1). Mr. Lucas pled not guilty and was convicted at a jury trial only on counts 1-5.

Before the trial, Mr. Lucas moved to suppress evidence obtained from the entry and search of his residence. He also requested a hearing regarding whether statements he made to the officers were voluntary, and he filed a motion in limine to exclude gang references at trial. The district court denied the motion to suppress, finding that the officers had received valid consent to enter and search Mr. Lucas's home. Because the government had instructed its witnesses not to make references to Mr. Lucas's gang involvement, the district court found the motion in limine moot.

Beyond the evidence gathered during the searches, the trial evidence against Mr. Lucas also involved witness testimony, wiretapped conversations, and other evidence relating to an extensive investigation into another drug dealer's operations that involved Mr. Lucas.

Mr. Lucas claims that several events occurred during trial that deprived him of his right to a fair trial. During the cross-examination of government witness Alejandra Lujan, her attorney, Mr. Pointer, (who was not an attorney of record in this case) interrupted and asked the judge for permission to approach the bench. The judge permitted Mr. Pointer to do so. They conferred together and with counsel for the parties, outside the hearing of the jury, regarding Mr. Pointer's objection to the line of questioning. The judge questioned Mr. Pointer's standing to make any objection, and Mr. Pointer eventually withdrew the objection. Government counsel stated that he was

also going to object but that Mr. Pointer had done so first.  The judge explained to the jury that the person who had interrupted the proceedings was Ms. Lujan's counsel, who had wished to express a point to the court.  The judge then proceeded with the trial.

The following day, Mr. Lucas sought a mistrial, arguing that the disruption had prejudiced the jury.  He also argued that a reference Ms. Lujan made to the defendant's gang membership in her testimony was a basis for mistrial.  When asked how Mr. Lucas knew her husband, she had responded, "Well, I never really asked, but my husband did tell me one time that they were gang rivals when they were younger."  ROA, Vol. 3, at 128.

The court denied the motion, finding no resulting prejudice.  The jury did not hear the basis for Mr. Pointer's objection, and the district court gave a curative instruction immediately after Ms. Lujan's inadvertent gang-activity statement and defense counsel's objection to the statement.  Thus, the district court held that any error was harmless.

When police officer Snyder was cross-examined, counsel asked him if Mr. Lucas was "a source to Ms. Lujan." *Id.* at 260.  Officer Snyder answered, "He was a distributor." *Id.*  Counsel responded, "My question is, was Mr. Lucas a source to Ms. Lujan?" *Id.*  Officer Snyder stated, "No, sir.  He was a distributor." *Id.*  Mr. Lucas's counsel objected and asked that Officer Snyder's statement be stricken because it was an improper conclusion regarding what should be a jury determination.  The district court sustained the objection and struck the testimony regarding the references to Mr. Lucas as a distributor.  Mr. Lucas never moved for a mistrial based on the distributor statement.

Mr. Lucas was convicted on counts 1-5 and sentenced to 120 months of imprisonment and three years of supervised release.  He filed a timely appeal with this court.

## II.  DISCUSSION

Mr. Lucas argues that the district court should have granted his motion to suppress and made multiple errors during his trial that individually and collectively deprived him of a fair trial.

### A.  *Motion to Suppress*

Mr. Lucas argues that the district court erred in denying his motion to suppress the evidence obtained from the officers' initial entry into his home.  In reviewing "a district court's denial of a motion to suppress, we review de novo the district court's ultimate determination of reasonableness under the Fourth Amendment."  *Unites States v. Ruiz*, 664 F.3d 833, 838 (10th Cir. 2012).   However, "we accept the district court's factual findings unless they are clearly erroneous and we view the evidence in the light most favorable to the prevailing party."  *Id.*

"A warrantless search of a suspect's home is per se unreasonable under the Fourth Amendment unless the government can show that it falls within 'one of a carefully defined set of exceptions.'"  *United States v. Cos*, 498 F.3d 1115, 1123 (10th Cir. 2007) (quoting *Coolidge v. New Hampshire*, 403 U.S. 443, 474 (1971)).  "Consensual searches constitute one exception to the warrant requirement."  *Id.* at 1124 (citing *Schneckloth v. Bustamonte*, 412 U.S. 218, 219 (1973)).  "Consent may be obtained from the individual

whose property is searched, or in certain instances, from a third party who possesses either actual authority or apparent authority to consent to the search." *Id.* (citing *United States v. Matlock*, 415 U.S. 164, 169-72 (1974)). "Under the fruit of the poisonous tree doctrine, the exclusionary rule bars the admission of physical evidence and live witness testimony obtained directly or indirectly through the exploitation of police illegality." *Unites States v. Lin Lyn Trading, Ltd.*, 149 F.3d 1112, 1116 (10th Cir. 1998) (quotations omitted); *see also Segura v. United States*, 468 U.S. 796, 804 (1984).

Mr. Lucas asserts that the woman who opened the door lacked actual or apparent authority to allow the officers to enter. "There is no dispute that the [woman] told law enforcement that she did not live there." Aplt. Br. at 36. According to Mr. Lucas, because the officers had no legal authority to enter the home, all evidence seized and statements made by Mr. Lucas should have been suppressed as "fruit of the poisonous tree." *Id.*

The Supreme Court has explained that the overriding issue in fruit of the poisonous tree cases is "whether, granting establishment of the primary illegality, the evidence to which instant objection is made has been come at by exploitation of that illegality or instead by means sufficiently distinguishable to be purged of the primary taint." *Wong Sun v. United States*, 371 U.S. 471, 488 (1963). "We need not hold that all evidence is 'fruit of the poisonous tree' simply because it would not have come to light but for the illegal actions of the police." *Id.* at 487-88.

We need not decide whether error was invited or whether the officers' initial entry

was improper because, even if it were, Mr. Lucas's consent to the officers' presence immediately thereafter was sufficient to purge any taint. The officers did not see any suspect evidence immediately upon entry, so "the evidence to which [the] instant objection is made" was not "come at by exploitation" of any illegality. *See id.*

Upon entry, the officers discovered that Mr. Lucas owned or leased the home, and he consented to sit and speak with them. Although he was present when the officers entered, Mr. Lucas did not comment on their entry. He also consented to their search of his home before they discovered any evidence of crime. Mr. Lucas's consent to the officers' presence and search was sufficient to dissipate any taint caused by an illegal initial entry. *See U.S. v. Jarvi*, 537 F.3d 1256, 1260 (10th Cir. 2008). Thus, the district court did not err in denying Mr. Lucas's motion to suppress.[1]

## B. *Motion for Mistrial*

Mr. Lucas argues that the district court erred in denying his motion for a mistrial after an attorney who was not of record in the case disrupted proceedings and after a witness referenced Mr. Lucas's previous gang membership.

---

[1]After oral argument, counsel for Mr. Lucas submitted a Fed. R. App. P. Rule 28(j) letter. It claims there was contradictory trial testimony as to when Officer Adkins first saw Mr. Lucas—whether it was when the officer was outside or when he stepped in the home. This trial testimony was available to Mr. Lucas for initial briefing and does not appear to be supplemental authority as contemplated by Rule 28(j). *See Shivwits Band of Paiute Indians v. Utah*, 428 F.3d 966, 980-81 (10th Cir. 2005). Furthermore, the alleged conflict would make no difference to our analysis. Whether Officer Adkins saw Mr. Lucas immediately preceding or following the entry, the search was valid because of Mr. Lucas's consent.

The government argues that plain error should apply to the interruption because Mr. Lucas made no contemporaneous objection and only moved for a mistrial the following morning. It also argues that, because Mr. Lucas requested the curative instruction that the district court gave regarding the gang reference, any error was invited error and appellate review should be precluded, or, in the alternative, plain error should apply.

We need not decide whether plain error review is required because Mr. Lucas cannot prevail even under an abuse of discretion standard. As a general rule, "[w]e review a district court's refusal to grant a mistrial for abuse of discretion." *United States v. Meridyth*, 364 F.3d 1181, 1183 (10th Cir. 2004). "The district court has discretion to grant a mistrial only when a defendant's right to a fair and impartial trial has been impaired." *Id.* "Motions for mistrial call for an examination of the prejudicial impact of an error or errors when viewed in the context of an entire case." *Id.* (alterations omitted) (quotations omitted). "[T]he effect of improper evidence may be remedied by admonishing the jury to disregard [the evidence] and by withdrawing the evidence[,]" but "there are cases where the prejudicial effect cannot be erased because the evidence is of such a nature that it necessarily interferes with the jury's impartial consideration of other evidence." *United States v. Laymon*, 621 F.2d 1051, 1053 (10th Cir. 1980).

The district court stated that the interruption, though unusual, caused no prejudice. The court told the jury the identity of the man who had interrupted the proceedings, but the jury did not hear the substance of the conversation before the bench. The district

court therefore found no prejudicial effect was possible. It also found that the gang reference was inadvertent and the curative instruction was sufficient to remedy any harm.

Our court's precedents support our conclusion that the district court did not abuse its discretion in concluding that the interruption and the gang reference did not warrant a mistrial. *See United States v. Santiago*, 977 F.2d 517, 520 (10th Cir. 1992) ("Absent evidence to the contrary, it is presumed that juries follow the trial court's instructions."); *Laymon*, 621 F.2d at 1053 ("Whether a motion for mistrial should be granted is within the discretion of the trial judge because he is in the best position to evaluate the effect of the offending evidence on the jury."); *United States v. Evans*, 542 F.2d 805, 814-16 (10th Cir. 1976) (holding no abuse of discretion in denying a mistrial where there had been a bomb threat, a letter signed by one of the defendants to a juror, and a defense witness lunging into the jury box and landing on the lap of a juror).

### C. *Evidentiary Harpoon*

"[A]n 'evidentiary harpoon' is a metaphorical term used to describe an attempt by a government witness to deliberately offer inadmissible testimony for the purpose of prejudicing the defendant." *United States v. Cavely*, 318 F.3d 987, 996 n.2 (10th Cir. 2003). Mr. Lucas argues that Officer Snyder's statements that Mr. Lucas was a distributor were evidentiary harpoons "calculated to prejudice Mr. Lucas, and did in fact unduly prejudice [him]." Aplt. Br. at 30. The district court struck those portions of testimony, but "Mr. Lucas asserts the unduly prejudicial damage had already occurred, denying his constitutional rights." *Id.*

Because the district court sided with Mr. Lucas, he "cannot fairly be said to be appealing the district court's ruling on his objection." *United States v. Taylor*, 514 F.3d 1092, 1096 (10th Cir. 2008). "Instead, [his] complaint can more accurately be said to pertain to the adequacy of the district court's curative actions." *Id.* Although Mr. Lucas frames the issue in his brief as whether there were evidentiary harpoons, his essential argument is that "even after the district court's [curative] instructions to the jury, there remained a modicum of uncured prejudice sufficient to imperil his right to a fair trial." *Id.*

Because Mr. Lucas "neither advanced a contemporaneous objection to the district court's curative instruction, nor moved for a mistrial" on that basis, he did not properly preserve the claim of error for appeal. *Id.* "Where this happens—where a party seeks on appeal to raise an issue not squarely presented to the district court in order to allow it to exercise its judgment in the first instance—we traditionally review only for plain error." *Id.*

To demonstrate plain error, Mr. Lucas must show "(1) error, (2) that is plain, which (3) affects [his] substantial rights, and which (4) seriously affects the fairness, integrity, or public reputation of judicial proceedings." *Id.* 1100.

Mr. Lucas has not shown that the district court's decision to strike the relevant portions of testimony was error, let alone plain error. As explained previously, the trial judge is in the best position to determine the prejudicial effect of improper testimony on the jury. *See Laymon*, 621 F.2d at 1053. We cannot say that it was error for the district

-11-

court to deny a mistrial after the improper comments about Mr. Lucas being a distributor. *See Cavely*, 318 F.3d at 997 ("A trial court may appropriately grant a mistrial only when a defendant's right to a fair and impartial trial has been impaired; a decision we review for an abuse of discretion." (alteration omitted) (quotations omitted)).

Furthermore, the district court's curative instruction did not "seriously affect[] the fairness, integrity or public reputation of judicial proceedings." *Taylor*, 514 F.3d at 1100. The curative instruction was "reasonably designed" to address Mr. Lucas's concern regarding the testimony, "and we cannot say [the court's] failure, on its own motion, to offer a more fulsome instruction" or to grant a mistrial "rose to the level of plain error." *Id.* at 1101.

### D. *Cumulative Error*

"A cumulative-error analysis aggregates all errors found to be harmless and analyzes whether their cumulative effect on the outcome of the trial is such that collectively they can no longer be determined to be harmless." *United States v. Barrett*, 496 F.3d 1079, 1121 (10th Cir. 2007) (quotations omitted). "We consider whether the defendant's substantial rights were affected by the cumulative effect of the harmless errors." *Id.* (quotations omitted). "Only actual errors are considered in determining whether the defendant's right to a fair trial was violated." *Id.* (quotations omitted).

Because we have determined that the district court did not commit any of the errors Mr. Lucas alleges, there are no errors to cumulate. *See id.* Mr. Lucas therefore cannot succeed on his claim of cumulative error.

-12-

### III.    CONCLUSION

Because we uphold the district court's denial of the motion to suppress and because Mr. Lucas has not demonstrated that he was deprived of his right to a fair trial, we affirm.

ENTERED FOR THE COURT


Scott M. Matheson, Jr.
Circuit Judge