**PUBLISH**

**UNITED STATES COURT OF APPEALS**

December 14, 2011

**TENTH CIRCUIT**

UNITED STATES OF AMERICA,

    Plaintiff - Appellee,

v.

MICHAEL WAYNE FLEMING,

    Defendant - Appellant.

No. 11-8012

---

**APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF WYOMING
(D.C. NO. 2:10-CR-00125-ABJ-1)**

---

Megan L. Hayes, Corthell and King, P.C., Laramie, Wyoming, appearing for Appellant.

Eric J. Heimann, Special Assistant United States Attorney (Christopher A. Crofts, United States Attorney, with him on the brief), Office of the United States Attorney for the District of Wyoming, Cheyenne, Wyoming, appearing for Appellee.

---

Before **GORSUCH, ANDERSON,** and **MATHESON,** Circuit Judges.

---

**MATHESON**, Circuit Judge.

---

In this direct appeal, Defendant-Appellant Michael Fleming challenges his conviction and sentence. Mr. Fleming argues that the prosecutor made improper statements during closing arguments at trial and thereby violated his right to a fair trial.

He also argues that the district court erred by applying a two-level enhancement to his offense level for obstruction of justice under section 3C1.1 of the Sentencing Guidelines. Exercising jurisdiction under 28 U.S.C. § 1291 and 18 U.S.C. § 3742(a), we affirm Mr. Fleming's conviction and sentence.

## I.    BACKGROUND

### A.  The Charge

On May 20, 2010, the grand jury for the District of Wyoming indicted Mr. Fleming on one count of conspiracy to possess with intent to distribute, and to distribute, 50 grams or more of methamphetamine, in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(B) and 21 U.S.C. § 846.  Mr. Fleming pled not guilty and requested a jury trial.

On September 21, 2010, the grand jury returned a superseding indictment charging Mr. Fleming with one count of conspiracy to possess with intent to distribute, and to distribute, 500 grams or more of methamphetamine, in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(A) and 21 U.S.C. § 846.

### B.  The Telephone Calls

While he awaited his trial, Mr. Fleming was detained in the County Detention Center in Scotts Bluff, Nebraska.  Sometime during his detainment, Mr. Fleming learned the names of several witnesses who planned to testify against him at his trial.

On August 29, 2010, Mr. Fleming called a woman named Michelle using a jail telephone.  He asked Michelle to tell "Fish" with the "Sons" that the witnesses who planned to testify against him (Mr. Fleming) were also "snitching" about drug sales by

"Fish." Aple. Br., at 22-23.[1] Mr. Fleming repeated the names of the witnesses twice so that Michelle could write them down. He also told Michelle the names of the correctional facilities where he believed the witnesses were incarcerated.

On September 1, 2010, Mr. Fleming again called Michelle using a jail telephone and asked her to warn "Fish" about the witnesses. He stated: "I'm up here in Scotts Bluff, you know, I'm just trying to warn him. You know, warn Fish that, you know, these [people] are using his name and trying to, you know rat him out and get less time." *Id.* at 23. Michelle assured Mr. Fleming that she would contact "Fish" and get him the information.

During the same telephone conversation, Mr. Fleming also told Michelle that a woman named Cathy Scott had been subpoenaed to testify at his trial. He then stated:

> [T]ell her not to be talking to anybody about this shit . . . .
> I'm afraid that they might use her, try to use her against me,
> or threaten her with a, putting a case on her, to testify against
> me, 'cause these are some dirty people man. DEA is. And
> DEA has been the ones that been talking to her. Tell her . . .
> they're . . . devious as hell.

*Id.* Mr. Fleming also stated that he could not call Ms. Scott because the jail had blocked him from calling her telephone number. Michelle told Mr. Fleming that she would deliver the message to Ms. Scott.

---

[1] Although we have reviewed the record in its entirety, throughout this opinion we cite the statements from Mr. Fleming's telephone calls to the Government's brief because the transcripts of the telephone calls were filed under seal. The Government's brief was not filed under seal.

**C.** *The Trial*

During Mr. Fleming's jury trial, the Government stipulated that no drugs had been seized from Mr. Fleming's person or residence. The Government therefore focused its case on showing that Mr. Fleming had acted as a middleman between Wyoming methamphetamine distributors and Colorado methamphetamine suppliers from June 2009 to March 2010. To do so, the Government presented testimony from several methamphetamine users and distributors from Wyoming and Colorado. Several of the Government's witnesses were co-conspirators of Mr. Fleming and testified against Mr. Fleming pursuant to plea agreements.

The witnesses testified that on several occasions: (1) drug distributors in Wyoming pooled their money to purchase methamphetamine, (2) the distributors met Mr. Fleming at the hotel where he lived in Colorado, (3) the distributors transported Mr. Fleming to meet with someone who could supply large quantities of methamphetamine, (4) Mr. Fleming purchased methamphetamine from his source using the distributors' money, (5) Mr. Fleming gave the methamphetamine to the distributors, and (6) the distributors gave Mr. Fleming a portion of their purchase for his services.

The defense focused its case on the lack of drugs seized from Mr. Fleming and the credibility of the Government's witnesses. During closing argument, Mr. Fleming's attorney began by pointing out that no controlled substances or drug paraphernalia had been seized from Mr. Fleming or from any of his residences. Defense counsel then stated: "So who did [the prosecutor] call [to testify]?" ROA, at 578. Counsel then recited the criminal record of each Government witness.

During his rebuttal closing argument, the prosecutor responded to defense counsel's comments concerning the witnesses. In relevant part, the prosecutor stated:

> I wish that priests and nuns attended drug deals. I wish they came along when drug dealers got together to decide that they were going to bring methamphetamine from Denver to Cheyenne to pollute this community with methamphetamine's poison and take money back to Denver so they don't have to do real jobs.
>
> The . . . felony convictions that [defense counsel] read to you, you already heard them from the witnesses at the very beginning of their testimony. They are who they are . . . . They are the best witnesses to talk about drug conspiracies because they are the only people who live it and really know it. And in this case they were the only people who were there, the only people other than [Mr. Fleming]. It's ironic to read Cathy Scott's felonies when they've been friends for 30 years.

*Id.* at 583. Mr. Fleming did not object to these statements.

The jury convicted Mr. Fleming of conspiracy to possess with intent to distribute, and to distribute, 500 grams or more of methamphetamine.

## D. The Sentence

The United States Probation Office's presentence report recommended a two-level enhancement on Mr. Fleming's offense level for obstruction of justice under section 3C1.1 of the Sentencing Guidelines. Section 3C1.1 provides that a defendant's offense level be increased by two levels for obstruction of justice if:

> 1) the defendant willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice with respect to the investigation, prosecution, or sentencing of the instant offense of conviction, and

2) the obstructive conduct related to (A) the defendant's offense of conviction and any relevant conduct; or (B) a closely related offense . . . .

During Mr. Fleming's sentencing hearing, the Government presented complete transcripts of Mr. Fleming's telephone conversations to support the two-level enhancement for obstruction of justice. It also presented testimony from Special Agent Jeffrey Smith of the Wyoming Division of Criminal Investigation. Special Agent Smith testified that the person Mr. Fleming referred to as "Fish" during his conversation with Michelle was a known member of the Sons of Silence motorcycle gang, which is known to have members and associates in prisons.

Mr. Fleming objected to the two-level enhancement for obstruction of justice. The district court rejected his arguments and concluded that his conduct had "a tendency to obstruct justice and certainly created risks to the witnesses and concerns on their part." ROA, at 615. The district court therefore applied a two-level enhancement to Mr. Fleming's offense level. The court sentenced Mr. Fleming to 240 months of imprisonment and five years of supervised release.

Mr. Fleming now appeals his conviction and sentence.

## II. DISCUSSION

On appeal, Mr. Fleming argues that the prosecutor's statements during closing argument substantially prejudiced the verdict and violated his right to a fair trial. He also argues that the district court erred in applying a two-level enhancement to his offense level for obstruction of justice.

**A.** *Prosecutorial Misconduct*

Mr. Fleming argues that the prosecutor's statements during his rebuttal closing argument constituted prosecutorial misconduct and deprived him of his right to a fair trial. Because defense counsel did not object to the prosecutor's statements at trial, we review this issue for plain error. *See United States v. Taylor*, 514 F.3d 1092, 1100 (10th Cir. 2008). "Plain error occurs when there is (1) error, (2) that is plain, which (3) affects the defendant's substantial rights, and which (4) seriously affects the fairness, integrity, or public reputation of judicial proceedings." *Id.* "When evaluating allegedly inappropriate remarks of counsel for plain error, we must view the remarks in the context of the entire trial." *United States v. Lopez-Medina*, 596 F.3d 716, 738 (10th Cir. 2010) (quotations omitted).

We analyze whether a statement constitutes prosecutorial misconduct using a two-step process. *See United States v. Rogers*, 556 F.3d 1130, 1140-41 (10th Cir. 2009) ("Allegations of prosecutorial misconduct are mixed questions of fact and law that require a two-step process for review."); *see also United States v. Baldridge*, 559 F.3d 1126, 1134 (10th Cir. 2009) (noting that "the two-step process for evaluating claims of prosecutorial misconduct . . . is the test we apply to evaluate the merits of a claim . . . not our standard of review"). First, we determine whether "the prosecutor's statements were improper." *United States v. Irvin*, 656 F.3d 1151, 1171 (10th Cir. 2011). Second, we determine whether the prosecutor's improper statements were "harmless beyond a reasonable doubt." *Id.* (quotations omitted).

The Government generally bears the burden of proving that an improper statement is harmless beyond a reasonable doubt. *See Rogers*, 556 F.3d at 1141. But when a

defendant fails to object to an allegedly improper statement during trial, "we review only for plain error and it is the defendant rather than the Government who bears the burden of persuasion with respect to prejudice." *United States v. Solon*, 596 F.3d 1206, 1212 (10th Cir. 2010) (quoting *United States v. Olano*, 507 U.S. 725, 734 (1993)). Thus, when, as here, a defendant fails to object to a prosecutor's statement, reversal is warranted only when: (1) the prosecutor's statement is plainly improper and (2) the defendant demonstrates that the improper statement affected his or her substantial rights. *See Rogers*, 556 F.3d at 1141.

Mr. Fleming claims the prosecutor's statements were improper in two ways. First, he contends the statements were "intended to inflame the jurors' passions and sympathies to obtain a guilty verdict to protect the community from the scourge of drugs." Aplt. Opening Br., at 26. Second, he argues the statements appealed "for a guilty verdict based on [his] 'guilt by association.'" *Id.* We conclude that Mr. Fleming has failed to demonstrate that the prosecutor's statements resulted in plain error.

### 1. *Protection of the Community*

"Prosecutors are not permitted to incite the passions of a jury by suggesting they . . . act as the 'community conscience' to society's problems." *Rogers*, 556 F.3d at 1143; *see also Wilson v. Sirmons*, 536 F.3d 1064, 1120 (10th Cir. 2008) ("It is improper for a prosecutor to suggest that a jury has a civic duty to convict." (quotations omitted)). This restriction "is balanced, however, by the acknowledgement that in an emotionally charged trial, the prosecutor's closing argument need not be confined to such detached

exposition as would be appropriate in a lecture." *United States v. Jones*, 468 F.3d 704, 708 (10th Cir. 2006) (quotations omitted).

During his closing argument, Mr. Fleming's attorney challenged the credibility of the prosecution's witnesses. He stated: "who did [the prosecution] call? . . . I am going to remind you of their records." ROA, at 569. He then recited the criminal record of each Government witness.

In rebuttal closing argument, the prosecutor stated:

> I wish that priests and nuns attended drug deals. I wish they came along when drug dealers got together to decide that *they were going to bring methamphetamine from Denver to Cheyenne to pollute this community with methamphetamine's poison and take money back to Denver so they don't have to do real jobs.* I wish folks who dealt drugs decided that [Agent] Smith could go with them on each of their trips. I wish it were safe to let men like [Agent] Smith and women who do the same job to go undercover for years at a time so that I could bring you perfect people to tell you what a drug conspiracy is like and to tell you about drug deals. I didn't put [the witnesses] in the same rooms as [Mr.] Fleming. He did. They're his friends. And ultimately whether they're good or bad people, whatever they've done in the past, they admitted it to you. . . .
>
> The . . . felony convictions that [defense counsel] read to you, you already heard them from the witnesses at the very beginning of their testimony. They are who they are, and they are the only people who live drug conspiracies, live drug deals every day, and can really tell you what happens. [Agent] Smith can tell you what he's learned about drug distribution and drug use, but he's telling you that based on interviews with people just like you saw testify. They are the best witnesses to talk about drug conspiracies because they are the only people who live it and really know it. And in this case they were the only people who were there, the only people other than [Mr. Fleming]. *It's ironic to read Cathy Scott's felonies when they've been friends for 30 years.*

*Id.* at 574-75 (emphases added).

Mr. Fleming contends that the prosecutor's statement that "they were going to bring methamphetamine from Denver to Cheyenne to pollute this community with methamphetamine's poison and take money back to Denver so they don't have to do real jobs," *id.* at 574, was "intended to inflame the juror's passions and sympathies to obtain a guilty verdict to protect the community from the scourge of drugs." Aplt. Opening Br., at 26.

When read in isolation, the prosecutor's statement could potentially support Mr. Fleming's position. But when evaluating whether a statement is improper, we must view the statement in context. *See Lopez-Medina*, 596 F.3d at 738 ("When evaluating allegedly inappropriate remarks of counsel for plain error, we must view the remarks in the context of the entire trial." (quotations omitted)); *see also United States v. Franklin-El*, 555 F.3d 1115, 1125 (10th Cir. 2009) ("A criminal conviction is not to be lightly overturned on the basis of a prosecutor's comments standing alone, for the statements or conduct must be viewed in context; only by doing so can it be determined whether the prosecutor's conduct affected the fairness of the trial." (quotations omitted)).

When read in context, the prosecutor's statement was responsive to defense counsel's argument that the Government's witnesses could not be believed because they were convicted felons. *See Franklin-El*, 555 F.3d at 1126 (finding it relevant in the context of a prosecutorial misconduct claim, that "many of the prosecutor's comments were responsive to defense counsel's closing in which he discussed the numerous

-10-

witnesses' credibility and questioned their motives to tell the truth"). "We have repeatedly recognized that considerable latitude is given [to] the prosecutor in closing argument in replying to an argument raised by defense counsel's closing statement." *United States v. Janus Indus.*, 48 F.3d 1548, 1558 (10th Cir. 1995); *see also United States v. Hall*, 625 F.3d 673, 685 (10th Cir. 2010) ("Prosecutors have considerable latitude to respond to an argument made by opposing counsel." (quotations omitted)); *United States v. Grey Bear*, 883 F.2d 1382, 1391-92 (8th Cir. 1989) ("It is well established that prejudicial error does not result from the improper remarks made during closing argument when such remarks were provoked by opposing counsel." (quotations omitted)). The prosecutor in Mr. Fleming's case did not exceed the scope of that latitude.

Because the prosecutor's statement was made in response to defense counsel's closing argument and does not appear to have been directed toward "incit[ing] the passions of a jury by suggesting they can act as the 'community conscience,'" we conclude that it was not improper.

### 2. *Guilt By Association*

"[T]he government frequently uses conspiracy to cast a wide net that captures many players." *United States v. Evans*, 970 F.2d 663, 668 (10th Cir. 1992). We therefore have warned that courts "must be careful to guard against guilt by association, to scrupulously safeguard each defendant individually, as far as possible, from loss of identity in the mass." *Id.* (quotations omitted).

During the rebuttal closing argument, the prosecutor stated: "It's ironic to read Cathy Scott's felonies when they've been friends for 30 years." ROA, at 575. Ms. Scott

-11-

was a long-time friend of Mr. Fleming who testified against him during his trial. According to Mr. Fleming's brief, Ms. Scott is, or was, a drug addict with three prior drug-related felonies. Aplt. Opening Br., at 8.

Mr. Fleming argues that the prosecutor's statement concerning Ms. Scott impermissibly encouraged the jury to render "a guilty verdict based on [his] 'guilt by association.'" *Id.* at 26. He claims the statement suggested he must have been guilty of conspiracy to distribute methamphetamine because he associated with Ms. Scott, who had been convicted of three drug-related felonies.

We need not decide whether the prosecutor's comment regarding Ms. Scott was improper, because even if it were, Mr. Fleming has not demonstrated that the statement violated his substantial rights. *See United States v. Mendoza*, 543 F.3d 1186, 1194 (10th Cir. 2008) ("Under the plain error standard, we reverse only when an error impacts a party's substantial rights, asking whether there is a reasonable probability that, but for the error claimed, the result of the proceeding would have been different."); *see also United States v. Sierra-Ledesma*, 645 F.3d 1213, 1227 (10th Cir. 2011) ("In this case we need not decide whether these allegations represent prosecutorial misconduct, because we are satisfied that any error is harmless." (quotations omitted)); *Franklin-El*, 555 F.3d at 1124-25 ("[T]he line between proper and improper advocacy is inexact, and even improper conduct does not in all cases warrant reversal."). "In evaluating the harm or prejudice of an [allegedly] improper statement, this court . . . considers the extent of the misconduct; whether the district court took steps to mitigate the impact of the misconduct; and the role of the misconduct within the case as a whole." *Irvin*, 656 F.3d at 1171.

Even if the prosecutor's comment regarding Ms. Scott could be construed as improper, "the jury was properly instructed that [statements and] arguments [of counsel] are not evidence and that [Mr. Fleming] [c]ould only be convicted on the basis of evidence submitted at trial." *Rogers*, 556 F.3d at 1141. Specifically, the jury was instructed that "Statements, arguments, and questions by lawyers are not evidence." ROA, at Vol. 1, Doc. 127, 2. We consistently have stated that "we presume the jury follows its instructions." *See, e.g.*, *Rogers*, 556 F.3d at 1141.

Additionally, "the statement[] complained of constituted only a small portion of the Prosecutor's closing argument." *See Sierra-Ledesma*, 645 F.3d at 1227; *see also Rogers*, 556 F.3d at 1141 (noting that the singular and isolated nature of improper commentary is a factor in determining whether prosecutorial statements affect the fairness of a trial). Furthermore, "when [considered] in context of the entire trial and the lengthy closing arguments, the objectionable [remark] did not significantly detract from the proper focus of the argument." *Rogers*, 556 F.3d at 1141 (quotations and alterations omitted). Finally, although Mr. Fleming alleged that the prosecutor's statement "enabl[ed] the Government to obtain a guilty verdict," Aplt. Opening Br., at 26, he has not explained *how* it did so. *See Franklin-El*, 555 F.3d at 1127 ("[A]lthough defendant concedes the plain error standard is appropriate to review his claims of prosecutorial misconduct, he makes no attempt to establish prejudice."). For these reasons, we conclude that Mr. Fleming has failed to establish that the prosecutor's statement resulted in plain error.

* * * *

In sum, we hold that the first statement challenged by Mr. Fleming was a response to defense counsel's closing argument and was not improper. Additionally, we hold that, even if the prosecutor's statement regarding Ms. Scott could be read as suggesting guilt by association, Mr. Fleming has not satisfied his burden of demonstrating that the statement violated his substantial rights. We therefore hold that Mr. Fleming has failed to satisfy the plain-error standard.

## B. *Obstruction of Justice Sentencing Enhancement*

We next address Mr. Fleming's argument that the district court erred in concluding that his statements to Michelle constituted an attempt to obstruct justice and warranted application of a two-level enhancement under the Sentencing Guidelines. "In reviewing the district court's application of the sentencing guidelines, this court reviews legal questions de novo and reviews factual findings for clear error, giving due deference to the district court's application of the guidelines to the facts." *United States v. Maestas*, 642 F.3d 1315, 1319 (10th Cir. 2011) (quotations omitted). "A finding of fact is clearly erroneous only if it is without factual support in the record or if the appellate court, after reviewing all of the evidence, is left with a definite and firm conviction that a mistake has been made." *Id.* (quotations omitted).

Section 3C1.1 of the Sentencing Guidelines states that an offense level should be increased by two levels if: "(A) the defendant willfully obstructed or impeded, or *attempted* to obstruct or impede, the administration of justice with respect to the investigation, prosecution, or sentencing of the instant conviction, and (B) the obstruction conduct related to . . . the defendant's offense of conviction . . . ." U.S.S.G. § 3C1.1

-14-

(emphasis added). The commentary to section 3C1.1 provides a nonexhaustive list of the types of conduct warranting the obstruction of justice enhancement, including "threatening, intimidating, or otherwise unlawfully influencing a co-defendant, witness, or juror, directly or indirectly, *or attempting to do so*." (Emphasis added).[2]

A defendant's offense level is enhanced by two levels for *attempted* obstruction of justice when the Government demonstrates that the defendant: (1) intended to obstruct justice, and (2) committed an act that constitutes a substantial step toward the obstruction of justice. *See United States v. Washington*, 653 F.3d 1251, 1264 (10th Cir. 2011) ("An attempt requires both (1) an intent to commit the substantive offense, and (2) commission of an act which constitutes a substantial step toward the commission of the substantive offense." (quotations omitted)); *see also United States v. Smith*, 264 F.3d 1012, 1015-16 (10th Cir. 2001) (applying the intent and substantial step requirements to determine whether a defendant attempted to commit an offense under the Sentencing Guidelines).

"A substantial step must be something more than mere preparation, yet may be less than the last act necessary before the actual commission of the substantive crime." *Washington*, 653 F.3d at 1264 (quotations and citation omitted). A step need not be the final step toward commission of a crime to constitute a substantial step. *See id.* Thus, "[t]he fact that further, major steps remain before the crime can be completed does not preclude a finding that the steps already taken are substantial." *Id.* (quotations omitted).

---

[2] "Commentary in the Guidelines Manual that interprets or explains a guideline is authoritative unless it violates the Constitution or a federal statute, or is inconsistent with, or a plainly erroneous reading of, that guideline." *United States v. Torres-Ruiz*, 387 F.3d 1179, 1181 (10th Cir. 2004) (quotations omitted).

Rather, a substantial step is appropriately found where the defendant undertook "an act adapted to, approximating, and which in the ordinary and likely course of things will result in, the commission of [a] particular crime." *Id.* (quotations omitted). Moreover, "[t]he act or acts must be strongly corroborative of the firmness of the defendant's . . . intent." *Id.* (quotations omitted).

"Whether a defendant's actions amount to an attempt, and, in particular, whether his actions qualify as a substantial step, is a highly fact-specific inquiry." *Id.* (quotations omitted); *see also Smith*, 264 F.3d at 1017 ("[There is no] bright-line rule as to what constitutes a substantial step . . . . Whether the defendant has taken a substantial step is a heavily fact-specific question."). When engaging in this factual inquiry, a court must determine whether the defendant's *objective* acts strongly corroborate his criminal intent such that they constitute a substantial step. *See United States v. Prichard*, 781 F.2d 179, 181 (10th Cir. 1986) (noting that a defendant has taken a substantial step where his "objective acts . . . strongly corroborate his intent to [commit a crime]"); *see also United States v. Yost*, 479 F.3d 815, 819 (11th Cir. 2007) ("A substantial step can be shown when the defendant's objective acts mark his conduct as criminal and, as a whole, strongly corroborate the required culpability."); *United States v. Wesley*, 417 F.3d 612, 619 (6th Cir. 2005) ("[T]he substantial step requirement is an objective one . . . ." (quotations omitted)).

Mr. Fleming raises both a legal and a factual challenge to the district court's application of the obstruction of justice enhancement to his offense level. First, he contends that the statements he made to Michelle were legally insufficient to constitute a

substantial step toward obstructing justice because they were not made directly to witnesses. Second, he argues that the evidence presented does not demonstrate that he intended to obstruct justice or that he committed a substantial step toward obstructing justice.

We conclude that attempting to threaten or influence a witness through a third-party intermediary may constitute a substantial step sufficient to justify application of an obstruction of justice enhancement. We further conclude that the district court did not clearly err in concluding that Mr. Fleming's statement to Michelle concerning Ms. Scott constituted an attempt to obstruct justice. Because we conclude that the statement concerning Ms. Scott constituted an attempt to obstruct justice, we need not and do not address whether Mr. Fleming's statements to Michelle concerning "Fish" also constituted an attempt to obstruct justice.

### 1. *Statements Made to Third Parties*

Mr. Fleming contends that attempting to threaten or influence a witness through a third-party intermediary cannot constitute a substantial step toward obstructing justice absent a showing that the threat or message was actually communicated to the witness. He relies on the Fourth Circuit's decision in *United States v. Brooks*, 957 F.2d 1138 (4th Cir. 1992).

In *Brooks*, a Deputy United States Marshall testified during a sentencing hearing that he had overheard the defendant make a threatening comment concerning a witness to a third party. *See id.* at 1149. Based on this testimony, the sentencing court applied a two-level enhancement for obstruction of justice to the defendant's offense level. *See id.*

The Fourth Circuit reversed, concluding that the Deputy Marshall's testimony, "standing alone, c[ould] not support an enhancement for obstruction of justice under section 3C1.1." *Id.* The court determined that, "[a]t a minimum, section 3C1.1 requires that the defendant either threaten the codefendant, witness, or juror in his or her presence or issue the threat in circumstances in which there is some likelihood that the codefendant, witness, or juror will learn of the threat." *Id.* at 1149-50. The court concluded that there was "no evidence in th[e] record that [the witness] ever learned of [the defendant's] threat, [and] no basis for concluding from the circumstances in which the threat was made that [the witness] might learn of the threat." *Id.* at 1150. It therefore held that the obstruction of justice enhancement should not have been applied to the defendant. *See id.*

We have not expressly addressed whether indirect threats or statements made to third parties concerning witnesses can qualify for the obstruction of justice enhancement under section 3C1.1.[3] But the other circuits that have addressed this issue have not followed *Brooks*. *See, e.g.*, *United States v. Searcy*, 316 F.3d 550, 553 (5th Cir. 2002) ("The Fourth Circuit's conclusion in *Brooks* notwithstanding, there is nothing in the text of the guidelines or commentary which restricts application of [section] 3C1.1 only to situations in which the defendant directly threatens a witness or communicates the threat to a third party with the likelihood that it will in turn be communicated to the witness."); *United States v. Bradford*, 277 F.3d 1311, 1314-15 (11th Cir. 2002) (expressly rejecting

---

[3] Although we have not expressly addressed this issue, we have upheld application of the obstruction of justice enhancement based on threats to witnesses made through third parties. *See, e.g.*, *United States v. Reid*, 911 F.2d 1456, 1463 (10th Cir. 1990).

the holding in *Brooks* and concluding that communicating a threat directly to a witness is not required to support application of the obstruction of justice enhancement); *United States v. Jackson*, 974 F.2d 104, 106 (9th Cir. 1992) (holding that "[w]here a defendant's statements can be reasonably construed as a threat, even if they are not made directly to the threatened person, the defendant has obstructed justice"); *United States v. Capps*, 952 F.2d 1026, 1028 (8th Cir. 1991) (holding that because section 3C1.1 applies to attempts to obstruct justice, it is not essential that the threat be communicated to the target); *United States v. Shoulberg*, 895 F.2d 882, 884-86 (2nd Cir. 1990) (holding that a note to a third party constituted an attempt to keep a witness from cooperating with the government and justified application of section 3C1.1); *see also Searcy*, 316 F.3d at 552 (noting that "all other circuit courts which have addressed the issue have reached a conclusion different from the Fourth Circuit's in *Brooks*").

For instance, in *Jackson* the defendant disseminated to various third parties a copy of a cooperation agreement that the defendant's co-conspirator had entered into with the government. *See* 974 F.2d at 106. At the top of the agreement, the defendant wrote the words "Rat" and "Snitch." *Id.* On appeal, the defendant argued that his dissemination of the agreement was not sufficient to constitute obstruction of justice. *See id.* The Ninth Circuit, rejecting this argument, concluded that "[w]here a defendant's statements can be reasonably construed as a threat, even if they are not made directly to the threatened person, the defendant has obstructed justice." *Id.* The court then explained: "although [the defendant] did not directly threaten the [co-conspirator], he disseminated information that he knew could place [the co-conspirator] . . . in a position of danger." *Id.* It

-19-

therefore held that the district court had reasonably concluded "that the distribution of the agreement, with the additions," constituted a threat and justified application of the obstruction of justice enhancement. *Id.*

We find the reasoning of the Second, Fifth, Eighth, Ninth, and Eleventh Circuits persuasive. Section 3C1.1 expressly applies to attempts by defendants to directly or *indirectly* threaten, intimidate, or influence a potential witness. *See* U.S.S.G. § 3C1.1 & cmt. n.4(A). Accordingly, to qualify as an attempt to obstruct justice, "[a] defendant need not actually threaten the witness; he need only attempt to influence the[] [witness]." *United States v. Powell*, 973 F.2d 885, 894 (10th Cir. 1992). A defendant can attempt to influence a witness indirectly by asking a third party to threaten or communicate with the witness. Thus, as long as a threat or attempt to influence is intended to obstruct justice, it need not be made directly to the targeted witness. Accordingly, we hold that direct communication with a witness is not required to support application of the Sentencing Guidelines's obstruction of justice enhancement.[4]

**2. *Application to Mr. Fleming***

We next address Mr. Fleming's contention that the district court erred in concluding that the statements he made to Michelle constituted an attempt or attempts to

---

[4] Even if we were to adopt *Brooks*, which we do not, the facts of the instant case would still warrant application of the obstruction of justice enhancement. Under *Brooks*, the obstruction of justice enhancement may be applied when there is "some likelihood that the codefendant, witness, or juror will learn of the threat." 957 F.2d at 1150. Mr. Fleming asked Michelle to tell Ms. Scott not to talk to anyone about his case. Michelle agreed that she would relay the message to Ms. Scott. Accordingly, there was at least some likelihood that Ms. Scott would receive Mr. Fleming's message.

obstruct justice. "[W]e review the sentencing court's factual determinations concerning the obstruction of justice enhancement for clear error only." *United States v. Hankins*, 127 F.3d 932, 934 (10th Cir. 1997); *see also United States v. Gillepsie*, 452 F.3d 1183, 1189 (10th Cir. 2006) ("A district court's decision to enhance a sentence for obstruction of justice is reviewed only for clear error."). In so doing, "[w]e give due deference to the district court's application of the Guidelines to the facts and [to] its ability to judge the credibility of the witnesses upon whose testimony it relied." *Hankins*, 127 F.3d at 934. A district court's "finding of fact is clearly erroneous only if it is without factual support in the record or if the appellate court, after reviewing all of the evidence, is left with a definite and firm conviction that a mistake has been made." *Maestas*, 642 F.3d at 1319. (quotations omitted).

During Mr. Fleming's sentencing hearing, the Government provided the court with a complete transcript of the telephone calls Mr. Fleming made to Michelle. It also provided audio recordings of selected portions of the telephone calls. The transcripts reflect that during two of the calls Mr. Fleming asked Michelle to tell "Fish" with the "Sons" that certain witnesses planned to testify against Mr. Fleming and that these witnesses were also "snitching" about drugs sales by "Fish."

Additionally, the transcripts demonstrate that during the second call, Mr. Fleming informed Michelle that Ms. Scott had been subpoenaed to testify against him and that he stated:

> [*T*]*ell her not to be talking to anybody about this shit . . . .* I'm afraid that they might use her, try to use her against me, or threaten her with a, putting a case on her, to testify against

> me, cause these are some dirty people man.  DEA is.  And
> DEA has been the ones that been talking to her.  Tell her . . .
> they're . . . devious as hell.

Aple. Br., at 23 (emphasis added).

Based on his statements during the telephone conversations, the district court applied a two-level enhancement to Mr. Fleming's offense level for obstruction of justice.

Mr. Fleming contends that the district court erred in concluding that his statement to Michelle concerning Ms. Scott constituted an attempt to obstruct justice.  We disagree. The district court found that the defendant intended to obstruct justice when he requested that Michelle tell Ms. Scott not to talk about his case.  Specifically, the district court determined that Mr. Fleming's conduct "served no . . . [legitimate] purpose . . . the only conceivable benefit to Mr. Fleming was to suppress testimony of witnesses who would be appearing against him or were likely to appear against him and, in fact, did appear." ROA, at 615-16.  We do not find this interpretation of Mr. Fleming's statement to be clearly erroneous.

Mr. Fleming claims that when he told Michelle to warn Ms. Scott—a subpoenaed witness—"not to be talking to anybody about this shit," he was simply "trying to advise Ms. Scott of her right to an attorney during police questioning."  Aplt. Reply Br., at 8. But the district court considered and rejected this argument and there is no record evidence that contradicts that decision.  Accordingly, we cannot say that the district court's conclusion concerning Mr. Fleming's statement was clearly erroneous.

The district court also found that Mr. Fleming's "conduct ha[d] a tendency to obstruct justice and certainly created risks to the witnesses and concerns on their part."

-22-

ROA, at 615. It therefore concluded that Mr. Fleming's conduct constituted a substantial step toward the obstruction of justice. After reviewing the transcripts of Mr. Fleming's telephone conversation in their entirety, we conclude that, when viewed objectively and under the clearly erroneous standard, his request that Michelle tell Ms. Scott "not to be talking to anybody about this shit" constituted an attempt to threaten or influence Ms. Scott and satisfied the substantial step requirement.

In sum, we hold that the district court did not clearly err in concluding that Mr. Fleming's statement concerning Ms. Scott reflected an intent to obstruct justice and constituted a substantial step toward obstructing justice. We therefore affirm the district court's application of a two-level enhancement to Mr. Fleming's offense level for obstruction of justice. Because we conclude that Mr. Fleming's statement concerning Ms. Scott justified application of an obstruction of justice enhancement, we need not and do not address whether his statements concerning "Fish" would also justify such an enhancement.

## III. CONCLUSION

For the reasons discussed above, we hold that the prosecutor's statements during closing argument do not warrant reversal of Mr. Fleming's conviction. We also hold that the district court did not err in applying a two-level enhancement to Mr. Fleming's sentence for obstruction of justice. Based on these conclusions, we affirm Mr. Fleming's conviction and sentence.