**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**December 29, 2015**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

UNITED STATES OF AMERICA,

    Plaintiff - Appellee,

v.

NESTOR OBREGON-PEREZ,

    Defendant - Appellant.

No. 14-4067
(D.C. No. 2:13-CR-00532-TS-RTB-1)
(D. Utah)

_____

**ORDER AND JUDGMENT**[*]
_____

Before **KELLY**, **McKAY**, and **PHILLIPS**, Circuit Judges.
_____

Nestor Obregon-Perez appeals his conviction for violating 21 U.S.C. § 841(a)(1) and (b)(1)(A) based on the government's introducing certain evidence despite a pretrial stipulation allegedly disallowing it. Exercising jurisdiction under 28 U.S.C. § 1291, we affirm.

**FACTS**

Law enforcement officers discovered trays of plants that they suspected were marijuana on a grow site in Dixie National Forest in Garfield County, Utah. Most of the plants were seedlings. When officers arrived at the camp, they ordered Obregon-Perez to put his hands in the air; instead, he fled. The officers soon apprehended him.

_____

[*] This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

As proof that Obregon-Perez had been living at the camp, the government introduced evidence of a DNA match from a toothbrush found there and photos showing him near the plant-starter trays and beside a marijuana plant. The officers also found a large bag of marijuana seeds and packets of tomato, radish, carrot, and beet seeds.

The officers then counted the number of plants, taking care to include only plants with live (green) stems or leaves and independent root systems. The parties' Plant Stipulation, agreed upon a few days before trial, described the counting procedures used. It also provided that "[t]hese experienced officers recognized a small percentage of the plants as visually-identifiable marijuana plants. Most of the plants, however, were too immature to readily identify as marijuana plants by visual inspection. All the immature plants, however, were consistent with each other in appearance." R. vol. 1 at 227. The document further provided that "if called to testify, the above-named officers would testify consistent with this document." *Id.* at 228.

At trial, immediately after the stipulation was read into evidence, one of the officers named in the stipulation, Trooper Bairett, testified as follows:

Q: Trooper Bairett, did you do anything recently to double-check or make a triple check that there were, in fact, a thousand or more marijuana plants?

A: I went through the pictures and I counted that there were well over a thousand from what I could see just from the pictures.

Q: Is there any doubt in your mind that the Ranch Creek marijuana grow had a thousand or more marijuana plants?

A: None.

2

Q: About how many of the plants could you identify—and I know I'm kind of asking you to estimate, but if you would, about how many of the 2,825 plants could you estimate visually as being marijuana plants?

A: The other day when I talked to you, I was thinking around 20 percent. But then I went back through and started looking at the pictures of the plants, and I would put it at least 40 to 50 percent, because I've done a lot of research since we started this case and gone through my investigations, and marijuana plants, even when they are in their infancy, the leaves on them are very, very distinct. So it would be well up in the 50-percent range.

R. vol. 3 at 44–45. Obregon-Perez's counsel did not object to the testimony, but did cross-examine Trooper Bairett about an alleged inconsistency between this testimony and the stipulation. On redirect, Trooper Bairett expanded on his comments:

Q: Did all the little plants, while maybe at different levels of maturity, look consistent with each other?

A: Yes, sir. Might I expound on the plants themselves?

Q: Sure.

A: Can you bring up 2-I[?] As you can see, the leaves in this picture right here, marijuana plants, when they're a baby, their leaves come out with a little jagged edge on the leaf itself and veins all the way out. They are very distinct. If you look at baby tomato plants, baby cucumber plants, their leaves are very, very much different than these. None of those represent any other kind of plant. These plants right here are most certainly marijuana plants.

Q: When you say some 40 percent were able to be detected visually by you, does some of that estimate come from a recent study of these pictures?

A: Yes. When I spoke to you the other day, I said probably around 20 percent. When I went back and started looking through the pictures again and looking at the leaves very closely, they are most definitely marijuana leaves.

3

Q: How confident are you there was at least a thousand marijuana plants, live, viable marijuana plants in this marijuana garden?

A: 100 percent.

*Id.* at 58–59. On recross, the defense attorney asked Trooper Bairett if he could tell from a picture of some of the plants whether the leaves had fuzz on them. Trooper Bairett could not.

Additionally, at trial the government presented expert testimony from forensic scientist Terry Lamoreaux. As part of the investigation, law enforcement officers provided Lamoreaux one plant from each tray seized at the grow site. With these plants, he then performed three tests. First, Lamoreaux performed a macro test, visually examining the leaf structure, stems, leaf venation, and leaf shape. After visually examining the plants, Lamoreaux concluded that the plants all looked consistent and appeared to be marijuana. Second, Lamoreaux examined some of the plants under a stereomicroscope. He concluded that the leaves were marijuana leaves. Finally, Lamoreaux performed a chemical test on one plant. The plant tested positive for marijuana.

During closing arguments, the government did not mention Trooper Bairett's testimony that went beyond the agreed facts set out in the Plant Stipulation. Instead, defense counsel did so in his closing argument as part of an attack on Trooper Bairett's credibility. The jury convicted Obregon-Perez of manufacturing a controlled substance by cultivation, in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(A)(vii). On a special-verdict form, the jury also unanimously found that Obregon-Perez had

4

cultivated more than 1,000 marijuana plants. This triggered a 120-month mandatory minimum sentence. 21 U.S.C. § 841(b)(1)(A)(vii).

Obregon-Perez challenges his conviction based on Trooper Bairett's testimony that he alleges violated the Plant Stipulation.[1]

## DISCUSSION

Because Obregon-Perez failed to object to the testimony at trial, we review his claim for plain error. *United States v. Cavely*, 318 F.3d 987, 999 (10th Cir. 2003). To show plain error, a party must show that there is "(1) an error; (2) that is plain; (3) that affects substantial rights; and (4) that seriously affects the fairness, integrity, or public reputation of judicial proceedings." *United States v. Brown*, 400 F.3d 1242, 1253 (10th Cir. 2005) (citing *United States v. Olano*, 507 U.S. 725, 732 (1993)). The court may exercise its discretion to correct the error only if all prongs are satisfied. *United States v. Gonzalez Edeza*, 359 F.3d 1246, 1250 (10th Cir. 2004).

We can't see how the district court erred at all. Surely, the court was not required to raise the issue sua sponte—neither courts nor litigants would favor that approach. If the claim is merely for counsel's failure to object it would be better couched as an ineffective-assistance-of-counsel claim. But even if Obregon-Perez somehow made it past plain error's first prong, he has failed to cite any cases suggesting that his claimed error would be plain. For a district court to raise sua

---

[1] We are uncertain that the government in fact violated the Plant Stipulation. The Plant Stipulation references what the officers observed and thought when counting the plants at the grow site. But we will proceed on this assumption since the parties agree upon it.

sponte the defendant's objection for him here would overstep the proper bounds of the court's role. *Cf. United States v. Bagby*, 696 F.3d 1074, 1084 (10th Cir. 2012) (finding that the district court was not obliged to exclude sua sponte extraneous evidence about an earlier conviction when the defendant had failed to object to its introduction).

Obregon-Perez also fails the substantial-rights prong. "Under the plain error standard, we reverse only when an error impacts a party's substantial rights, asking whether there is a reasonable probability that, but for the error claimed, the result of the proceeding would have been different." *United States v. Mendoza*, 543 F.3d 1186, 1194 (10th Cir. 2008) (quotation marks omitted). Here, even without Trooper Bairett's testimony, we see no reasonable probability that the result would have changed. The government offered strong evidence that Obregon-Perez was cultivating more than 1,000 marijuana plants. For instance, using the Plant Stipulation, the government proved it had found 2,825 individual plants in a secret grow site deep in a national forest. According to the stipulation, all of the plants too small to be readily identified looked consistent. Scientific tests on a few of those plants revealed that at least some of those immature, consistent-in-appearance plants were marijuana. It is not a huge inferential leap to say that at least 1,000, just over a third, of those plants were marijuana. Additionally, common sense dictates that it is extremely unlikely that fewer than 1,000, about 35%, of those plants were marijuana. *See* R. vol. 3 at 187 (closing arguments) ("[I]f you walk into a campsite that's camouflaged in the middle of nowhere at 9,000 feet, you know something is going on

6

here besides ranch farming."). In addition, the government presented testimony from an acquaintance living nearby that Obregon-Perez had said he planned to grow marijuana in that area.

In its closing argument, the government relied primarily on the Plant Stipulation and scientific test results, not on Trooper Bairett's testimony. *See, e.g.*, *id.* at 172 ("Now admittedly some of the plants were too small to just instantly look at and know that's marijuana."); *id.* at 174 ("After all, you've heard that a lot of the plants were too small to even see they were marijuana, right? Yeah, that's right. That's why they sent a big pile of them to the scientist, and he said, they all look the same, I tested them, they are all marijuana."); *id.* at 175 ("[The defense is] going to point out, as we've already said, admittedly, a lot of the plants were too small. It wasn't obvious, a quick look, that's marijuana. Again, that's right. That's why we sent them to the lab."). The government pointed the jury to the consistent appearance of the immature plants and to the scientific testing rather than to Trooper Bairett's testimony. The government even encouraged the jury to read through the Plant Stipulation during deliberations. Because Obregon-Perez cannot establish the required four prongs of the plain-error analysis, we conclude that he has failed to establish plain error.

Similarly, Obregon-Perez has failed to show a colorable claim of prosecutorial misconduct. Because Obregon-Perez failed to object at trial, we review for plain error. *United States v. Taylor*, 514 F.3d 1092, 1095 (10th Cir. 2008). Although the government generally bears the burden of proving that an improper statement is

7

harmless beyond a reasonable doubt, under plain error review the defendant bears the burden of persuasion on prejudice. *United States v. Fleming*, 667 F.3d 1098, 1103 (10th Cir. 2011). Claims of prosecutorial misconduct are subject to a two-step test. *United States v. Gabaldon*, 91 F.3d 91, 94 (10th Cir. 1996). First, the court decides whether the prosecutor's conduct was plainly improper. *Fleming*, 667 F.3d at 1103. Second, the court decides whether any improper conduct affected the defendant's substantial rights. *Id.*

Even if we concluded that the prosecutor's questioning of Trooper Bairett was improper, Obregon-Perez still could not show the necessary prejudice from it. Again, the government did not reference Trooper Bairett's testimony during closing argument on the issue of the number of marijuana plants seized at the grow site, but instead relied on the scientific evidence and the Plant Stipulation. For these reasons, Obregon-Perez's prosecutorial-misconduct claim fails.

## CONCLUSION

For the foregoing reasons, we affirm the district court.


Entered for the Court


Gregory A. Phillips
Circuit Judge


8