FILED
**United States Court of Appeals**
**Tenth Circuit**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

**August 16, 2024**

**Christopher M. Wolpert**
**Clerk of Court**

———————————————————

UNITED STATES OF AMERICA,

    Plaintiff - Appellee,

v.

BRADLEY WAYNE MORRIS,

    Defendant - Appellant.

No. 23-7042
(D.C. No. 6:21-CR-00034-JFH-1)
(E.D. Okla.)

———————————————————

**ORDER AND JUDGMENT**[*]

———————————————————

Before **TYMKOVICH**, **EBEL**, and **EID**, Circuit Judges.

———————————————————

Bradley Wayne Morris was convicted at trial of sexually abusing his young daughter, B.M. He was sentenced to 420 months' imprisonment and a lifetime of supervised release. Mr. Morris's central claim on appeal is that prosecutorial misconduct during trial—improper vouching, asking the jury to act as the community conscience, and misstating the law—constitute plain error and warrant reversal of his conviction.

We affirm his conviction. Mr. Morris cannot show plain error by the district court. It was not plain or obvious that, without any objection, the court should have

---

[*] This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

ordered a new trial. But we do, however, remand the case to the district court to correct the discrepancies between the oral and written conditions of Mr. Morris's supervised release.

## I. Background

Mr. Morris's three children, triplets, were born in January 2010. The mother had primary custody of the children until 2014—at which point Mr. Morris gained custody due to a pending criminal case against the mother. In March 2020, Mr. Morris's daughter, B.M., attended a child-abuse prevention presentation at her school. After the presentation, ten-year-old B.M. approached the presenter and reported she was being abused at home, starting when she was seven or eight years old. The presenter reported the allegations of abuse to law enforcement and B.M. was examined by a forensic nurse. B.M. provided detailed testimony of her abuse, but the specific facts of such abuse are not relevant on appeal.

Mr. Morris was charged with two counts of aggravated sexual abuse in Indian Country pursuant to 18 U.S.C. § 2241(c), and two counts of abusive sexual contact in Indian Country pursuant to 18 U.S.C. § 2244(a)(5).[1] At trial, the government presented testimony from various witnesses, including B.M. herself, who was by then a 12-year-old fifth grader. The government also presented testimony from B.M.'s 12-year-old brother, who testified that he witnessed his father abuse his sister, and a

---

[1] Mr. Morris was initially charged by the State of Oklahoma, but the case was dismissed for lack of jurisdiction after the United States Supreme Court decision in *McGirt v. Oklahoma*, 591 U.S. 894 (2020).

police officer who found pornography on Mr. Morris's phone that matched B.M.'s description of pornography her father would make her watch.  The jury convicted Mr. Morris on all four counts.

At sentencing, the district court articulated the conditions of his supervised release.  But the court's written judgment included additional supervised release conditions not orally pronounced at sentencing.  The government concedes the orally pronounced sentence controls.

## II. Discussion

Mr. Morris alleges that several instances of prosecutorial misconduct rendered his trial so unfair as to make his conviction a violation of due process.  He argues the government improperly vouched for B.M., encouraged the jury to act as the community conscience, and misstated the law.  He also argues the cumulative effect of these errors deprived him of a fair trial.

Mr. Morris contends the district court plainly erred in not sua sponte addressing the alleged misconduct.  Because he failed to raise this objection we review for plain error.  *See United States v. Young*, 470 U.S. 1, 14–20 (1985).  "On plain-error review, the burden is on the defendant, and reversal is warranted only when:  (1) the prosecutor's statement is plainly improper and (2) the defendant demonstrates that the improper statement affected his or her substantial rights." *United States v. Vann*, 776 F.3d 746, 759 (10th Cir. 2015) (internal quotation marks omitted).  "An error is plain if it is so clear or obvious that it could not be subject to any reasonable dispute." *United States v. Starks*, 34 F.4th 1142, 1157 (10th Cir. 2022)

3

(citations omitted).  And "to be clear or obvious, the error must be contrary to well-settled law." *Id.* (quoting *United States v. Taylor*, 514 F.3d 1092, 1100 (10th Cir. 2008)).  "In general, for an error to be contrary to well-settled law, either the Supreme Court or this court must have addressed the issue."  *Id.* (quoting *United States v. Ruiz-Gea*, 340 F.3d 1181, 1187 (10th Cir. 2003)).

Vouching occurs when the prosecutor asks the jury to evaluate the evidence based on his or her personal assurances about the evidence.  "[W]hen reviewing vouching for plain error, we weigh the seriousness of the vouching in light of the context of the entire proceeding."  *United States v. Harlow*, 444 F.3d 1255, 1261 (10th Cir. 2006).  "[R]eversal is appropriate only if, after reviewing the entire record, we conclude that the error is obvious and one that would undermine the fairness of the trial and result in a miscarriage of justice." *United States v. Oberle*, 136 F.3d 1414, 1421 (10th Cir. 1998) (citations omitted).  "The relevant context includes the curative acts of the district court, the extent of the misconduct, and the role of the misconduct within the case." *Starks*, 34 F.4th at 1158 (citations omitted).  Although "[w]e apply the plain error rule less rigidly when reviewing a potential constitutional error," *id.* at 1157 (internal quotation marks omitted), "reversal in the absence of contemporaneous objection is a rare exception rather than the rule," *United States v. Hill*, 749 F.3d 1250, 1267 (10th Cir. 2014).

Mr. Morris claims the prosecutor repeatedly and improperly vouched for B.M. in opening and closing arguments.  "It is error for the prosecution to personally vouch for the credibility of its witnesses."  *United States v. Bowie*, 892 F.2d 1494,

4

1498 (10th Cir. 1990). But "[a]rgument or evidence is impermissible vouching only if the jury could reasonably believe that the prosecutor is indicating a personal belief in the witness' credibility, either through explicit personal assurances of the witness' veracity or by implicitly indicating that information not presented to the jury supports the witness' testimony." *Id.* *See also United States v. Anaya*, 727 F.3d 1043, 1053–54 (10th Cir. 2013) ("Vouching requires either . . . explicit personal assurances of the witness's veracity or . . . implicit[ ] indicat[ions] that information not presented to the jury supports the witness's testimony.") (citations omitted). Mr. Morris argues the prosecutor suggested a personal belief in B.M.'s credibility—through both explicit personal assurances and implicit indications.

Mr. Morris challenges four categories of statements from the opening and closing arguments. We address each in turn.

*First*, Mr. Morris argues the prosecutor provided explicit personal assurances of B.M.'s credibility in opening statements. The alleged improper statements are italicized below.

> We're going to call B.M. to come testify and she's going to tell you about the things that her father did to her, and you decide, do I believe her?
>
> Now, I submit to you that as you're listening to the evidence the things that you should keep in mind when you're assessing B.M.'s credibility, we've talked about it. How can you tell if someone is telling the truth? How do you know to believe them?
>
> The first thing I'm going to ask you to pay attention to as you're listening to the evidence are the details that she gives. B.M. is going to tell you about these incidents that

5

happened. *She's going to be able to give you a level of detail that I think lends credibility to what she's saying.*

. . .

*Her account is going to be very credible and very detailed about what she remembers happening to her.*

. . .

So, members of the jury, I think when you take a look after you listen to all the evidence and you're able to assess B.M., you're able to assess B.M.'s testimony and you see the testimony from the nurse regarding the physical findings, when you look at all of that together *I'm convinced that at the end of this trial you'll find beyond a reasonable doubt that the defendant -- that B.M. is telling the truth* and we're going to ask you to find the defendant guilty on all four counts of aggravated sexual abuse and abusive sexual contact.

R. Vol. I. at 361–65 (emphasis added).

Although the prosecutor used "I" during opening statements, we have made clear that this is not a *per se* due process violation. *See United States v. Jones*, 468 F.3d 704, 708 (10th Cir. 2006) (concluding the use of personal pronouns in closing argument was not a violation). It is also not plain that, in context, the prosecutor was attempting to express a personal opinion on B.M.'s credibility. Instead, the better interpretation is that the prosecutor was expressing that B.M.'s testimony would be very detailed. And "it is not improper for a prosecutor to direct the jury's attention to evidence that tends to enhance or diminish a witness's credibility." *Thornburg v. Mullin*, 422 F.3d 1113, 1132 (10th Cir. 2005). That said, statements such as these invite judicial scrutiny and should be avoided.

While we doubt there was error, Mr. Morris certainly cannot show any plain error—let alone error affecting substantial rights. An error seriously affects the defendant's substantial rights "when the defendant demonstrates that there is a reasonable probability that, but for the error claimed, the result of the proceeding would have been different." *United States v. Woods*, 764 F.3d 1242, 1245 (10th Cir. 2014) (citations omitted). "A reasonable probability is a probability sufficient to undermine confidence in the outcome . . . [and] [i]t is the defendant's burden to make this showing, even in a case of alleged constitutional error." *Starks*, 34 F.4th at 1157 (citations omitted). Mr. Morris has not met his burden.

"[F]actors relevant to determining whether the improper commentary affected the fairness of the trial include whether the instance was singular and isolated, whether the district court instructed the jury that the attorneys' argument was not evidence, and whether there was substantial evidence of the defendant's guilt." *Oberle*, 136 F.3d at 1421 (citations omitted). But we need not discuss each factor. *See id.* (discussing only the first two factors).

When evaluating alleged errors not raised below, "we must be cautious of a tendency to seize upon errors which, removed from context, take on an aspect of seriousness which they never had below." *Id.* (citations omitted). The statements Mr. Morris complains of make up a small part of the prosecutor's opening argument and "did not significantly detract from the proper focus of the argument." *United States v. Fleming*, 667 F.3d 1098, 1106 (10th Cir. 2011). Instead, the comments in context show that the prosecutor was encouraging the jury to pay attention to the level of detail this 12-

year-old could provide. The prosecutor also reminded the jury in closing that "you are

the judges of credibility. Credibility and believability is left up to you." R. at 860.

The district court, moreover, instructed the jury that statements and arguments

made by the lawyers are not evidence, and that the case was to be decided solely on

the evidence. The court also told the jury it was up to them to decide which

witnesses to believe. And "a jury is presumed to follow its instructions." *Weeks v.*

*Angelone*, 528 U.S. 225, 226 (2000). "[C]urative instructions will typically immunize

such a statement from affecting defendant's substantial rights . . . [and] [w]hen the jury

was properly instructed that [statements and] arguments are not evidence and that

[defendant] [c]ould only be convicted on the basis of evidence submitted at trial . . .

we have consistently refused to find plain error based on misstatements by the

prosecutor." *Vann*, 776 F.3d at 760. We conclude that any error by the district court in

not responding sua sponte is not reversible on plain-error review.

*Next*, Mr. Morris claims that the prosecutor, during closing, implicitly indicated

the United States possessed information not presented to the jury. The italicized

portions below represent the challenged statements:

> *You heard a lot of information from the defense about*
> *these injuries, about this urinary tract infection. But what*
> *did you hear from the United States? The only thing that*
> *Annette James came in here and told you is what she*
> *observed. That's it. Spoiler alert. The United States does*
> *not care if there are injuries.* Why? Because their own
> expert sat here and told you that in most sexual abuse
> cases, you will not see any injuries.
>
> Jessica Stombaugh. Why is she important? She talks about
> disclosure and the disclosure process. *Defense counsel has*

8

*sat up here and said that B.M. was inconsistent. She wasn't inconsistent. She was going through a disclosure process. Child victims are not like any other. It's different.* That's why people have specialized training in it. That's why people testify as experts. It's different. *What was she inconsistent about? Being seven, eight or nine? Spoiler alert. The United States doesn't care.*

*The law says in regards to credibility what does a discrepancy have to do with a material fact? Jessica Stombaugh told you she might not remember the age. But what do they associate?* They associate grade levels. They associate teachers. *They associate homes. And all of this happened in the home the defendant got from his mother. That's what's important.*

R. Vol. I at 885–86 (emphasis added).

Mr. Morris claims the prosecutor told the jury to rely on the prosecution's statements and the government expert, and that "[i]mplicit in this suggested reliance (on the prosecutor) is that the prosecutor and the government expert possessed information that wasn't presented at trial, but that supported a guilty verdict." Aplt. Br. at 19. He also claims the prosecutor implied the disputed evidence did not matter, and that the reasonable inference from such an implication is that the prosecutor was aware of information not shared with the jury. We disagree with Mr. Morris's characterization of these comments. No reasonable jury would believe the prosecutor was implying awareness of information not presented to the jury, and that such unknown evidence supported B.M.'s testimony. Thus, there is no plain error.[2]

---

[2] Mr. Morris also tries to frame the statement about Jessica Stombaugh as improper vouching, but this argument is meritless.

*Third*, Mr. Morris alleges the prosecutor asked the jury, during closing, to act as the community conscience and return a guilty verdict to perform its civic duty.  "It is improper for a prosecutor to suggest that a jury has a civic duty to convict." *Thornburg*, 422 F.3d at 1134.  "Prosecutors are not permitted to incite the passions of the jury by suggesting they can act as the 'community conscience' to society's problems."  *United States v. Rogers*, 556 F.3d 1130, 1143 (10th Cir. 2009).  "Appeals to the jury's emotion or sense of vengeance call[ ] into question the integrity of the criminal justice system by encouraging the jury to convict based on outrage, and not on the evidence."  *Wilson v. Sirmons*, 536 F.3d 1064, 1121 (10th Cir. 2008) (internal quotation marks omitted).

The prosecutor stated:  "What does the government want from Mr. Morris?  Well, the United States is asking that Mr. Morris stop sexually abusing his daughter.  That's what we're asking today."  R. Vol. I at 886–87.  This was not a request to the jury to act as the community conscience.  In an instructive case, *Thornburg v. Mullin*, we held the following comments did not amount to an appeal to community conscience:

> *Justice must run in this case for three victims,* for Donnie Scott. Mr. Thornburg has got to be told what he did was wrong. Not only was it wrong, this was terrible, folks. One of you said about mass murder. *One of the problems in our society is mass murder, violence, drugs, guns.* This is a mass murder. This is three helpless people who were gunned down, kidnapped tortured, burned alive and left dead in a house.

422 F.3d at 1134 (emphasis added).

We concluded that the "prosecutor's comments were firmly rooted in the facts of the case. We see little, if any, impropriety." *Id.* Similarly, here, the prosecutor's comment was rooted in the facts of the case—that Mr. Morris was sexually abusing his daughter. Mr. Morris argues the government misstated the evidence because there was no evidence in the record that he was "roaming free, preying on his daughter." Aplt Br. 24. But there was certainly evidence in the record he sexually abused his daughter. Mr. Morris also fails to argue why this statement caused him substantial prejudice.

*Fourth*, Mr. Morris argues the prosecutor at closing misstated the government's burden of proof. "It is improper for the prosecution to misstate the law in its closing argument." *United States v. Hollis*, 971 F.2d 1441, 1455 (10th Cir. 1992). He contends the government equated the presentation of evidence with providing proof beyond a reasonable doubt. The prosecutor's alleged misconduct is emphasized below:

> The law specifically states that testimony is direct evidence. Testimony. What B.M. said is direct evidence. *So don't let the defense tell you the United States has not met our burden because the evidence is B.M.'s testimony.* You are allowed to use your common sense. That's why it's in the instruction. You're allowed to use your common sense to look at testimony, to look at evidence.

R. Vol. I at 889.[3]

---

[3] Mr. Morris also claims this statement constitutes both forms of improper witness vouching, but that argument is inadequately briefed and meritless.

Mr. Morris contends this statement directed the jurors to ignore the "beyond a reasonable doubt standard" and to find the government satisfied its burden by simply presenting evidence. But Mr. Morris again mischaracterizes this statement and fails to demonstrate substantial prejudice. There is no implication from this comment that the prosecutor believed Mr. Morris was guilty only because B.M. testified against him. Defense counsel also argued in closing that the government lacked physical evidence, and "[w]e generally give prosecutors latitude in making closing arguments when defense counsel invites the argument." *Anaya*, 727 F.3d at 1056 (citations omitted). In addition, the jury was instructed that the defendant is presumed innocent, the burden of proof is on the government, and the government must prove guilt beyond a reasonable doubt.

Finally, Mr. Morris argues all the alleged errors, taken together, deprived him of a fair trial. "To analyze cumulative error, we aggregate all the errors that we have found to be harmless and determine whether their cumulative effect on the outcome of the trial mandates reversal." *Id.* at 1060–61 (internal quotation marks omitted). "Cumulative error analysis applies only if true errors occurred," *id.*, and we have not held that any errors occurred here. Even if we had held otherwise, Mr. Morris failed to show he was substantially prejudiced.

Mr. Morris argues that, because of all the alleged misconduct, the jury could not question B.M.'s credibility or fairly weigh the evidence. If the jury had, according to Mr. Morris, there is a reasonable probability he would not have been convicted. We disagree. The jury was properly instructed that statements and arguments made by the lawyers

are not evidence. And the alleged improper statements make up only a small part of the opening and closing arguments and were "simply not egregious enough to influence the jury to convict on grounds other than the evidence presented." *Rogers*, 556 F.3d at 1143 (internal quotation marks omitted). On appeal, we must ask, in the context of the entire trial, if the alleged misconduct "significantly detract[ed] from the proper focus of the argument." *Oberle*, 136 F.3d at 1422. We conclude they did not.

Further, although Mr. Morris argues otherwise, the government presented significant evidence to permit a reasonable fact finder to conclude beyond a reasonable doubt that Mr. Morris abused his daughter, including (1) evidence of pornography described by B.M. on Mr. Morris's phone, (2) B.M.'s brother's testimony, and (3) expert testimony. The evidence was enough for the jury to convict without the alleged misstatements. Thus, the error was neither plain nor did it affect substantial rights.

We do, however, remand this case to the district court to correct the discrepancies between the oral and written conditions of Mr. Morris's supervised release. In sentencing a criminal defendant, "[t]he sentencing judge must announce the sentence such that the defendant is aware of the sentence when leaving the courtroom." *United States v. Geddes*, 71 F.4th 1206, 1214 (10th Cir. 2023). "If a written judgment and orally pronounced sentence conflict, '[i]t is a firmly established and settled principle of federal criminal law that an orally pronounced sentence controls.'" *Id.* (quoting *United States v. Villano*, 816 F.2d 1448, 1450 (10th Cir. 1987) (en banc)).

The district court orally pronounced conditions of supervised release at sentencing. Then, in the written judgment, it included 13 additional discretionary conditions of supervised release that had not been orally pronounced at the sentencing hearing. The government agrees that the "unpronounced conditions of supervised release added to the written judgment after the sentencing hearing should be stricken as inconsistent with the oral pronouncement of sentence." Aple. Br. at 26.

### III. Conclusion

We AFFIRM Mr. Morris's convictions but REMAND the case to the district court to correct the discrepancy between the oral and written conditions of supervised release.

Entered for the Court

Timothy M. Tymkovich
Circuit Judge